BORGESS HOSPITAL *v.* UNION INDUSTRIAL TRUST &
SAVINGS BANK.

1. Banks and Banking—Deposits—Interest.

Agreement to pay interest on savings deposit would indicate
necessity for investment of moneys by bank and hence com-
mingling of funds.

2. Same—Deposits Presumed General.

Bank deposits are presumed to be general in the absence of evi-
dence to the contrary.

3. Same—Special Deposits.

Deposits will be regarded as special only when made and in-
tended for a special purpose by both depositor and bank, are
set aside and used solely for that purpose and are not mingled
with other funds of bank.

4. Same—Deposits—Preferences.

Specially naming bank accounts by depositor does not entitle
them to preference against assets in hands of bank conservator
where there is no intent to have them kept separately from
other funds of bank.

5. Depositaries—Banks and Banking—President.

President of depository bank was not negligent as to funds
for eleemosynary corporation's building campaign committee
where, upon accepting honorary post as its treasurer when he
assumed office as president, he merely continued previously
adopted arrangement as to depository, bank was not shown
to have been in a precarious situation at that time and com-
plete control over accounts and withdrawal of moneys was
retained by depositor.

6. Costs—Action Against Banking Commissioner.

Costs are not allowed in suit by depositor where question under
banking act is involved and banking commissioner is a party.
Weadock, J., dissenting.

Appeal from Genesee; Parker (James S.), J. Submitted October 6, 1933. (Docket No. 88, Calendar No. 37,426.) Decided December 5, 1933.

Bill by Borgess Hospital, a Michigan corporation, against Union Industrial Trust & Savings Bank, its conservator, Mark A. Sullivan, and Charles S. Mott, president, individually and as treasurer of St. Joseph Hospital Building Fund, to establish preference as to its deposits and to impose joint and several liability on defendants. Bill dismissed. Plaintiff appeals. Affirmed.

*Howard & Howard,* for plaintiff.

*Guy M. Wilson* and *Wilson & Hoffman,* for defendant bank and its conservator.

*Brownell & Gault,* for defendant Mott.

Butzel, J. Plaintiff Borgess Hospital, devoted to eleemosynary purposes, was organized as a non-profit corporation under the laws of this State. It is owned, managed and its work carried on by the Sisters of St. Joseph, a religious community of the Catholic Church. The corporation originally maintained hospitals at Kalamazoo and Monroe, Michigan. In 1920 it extended its activities to Flint, Michigan, where it acquired an old residence and adapted it to hospital uses. The facilities thus afforded proved inadequate, however, and plaintiff secured the assistance of a citizens' committee and professional campaign managers, who solicited the residents of Flint to obtain sufficient funds to erect a modern hospital building on land provided by the Sisters of St. Joseph.

In order to give the project more local color and to assure subscribers that their contributions would be devoted to local uses, Grant J. Brown, one of the chief executives of the Union Industrial Bank of Flint, was made treasurer of the building campaign, and the bank was selected as depository of the campaign funds. Subsequently, the bank became the Union Industrial Trust & Savings Bank of Flint. Owing to difficulties that arose in the bank, Brown withdrew from the presidency of the institution and also gave up his post as treasurer of the campaign. Charles S. Mott of Flint, upon becoming president of the bank, was induced to become campaign treasurer upon the assurance that his position would be solely an honorary one and that the duties connected therewith were already being performed by others. His testimony to that effect is undisputed. All funds collected during the incumbencies of Brown and Mott were deposited in the accounts of the hospital at the bank. Plaintiff's officers and trustees, consisting of the Sisters, retained complete control over the bank accounts and the withdrawal of moneys therefrom, either directly or through their own agents.

An agent of the corporation testified that he suggested at one time that, instead of depositing these funds, they be invested "in 5⅛ per cent. liberty bonds," evidently an issue of short-time treasury certificates. Mr. Brown, then president of the bank, advised to the contrary. The major portion of the money was deposited in a Union Industrial Trust & Savings Bank savings account and the sum of $16,239.82 earned and credited as interest at the rate of 4 per cent. At one time, at the request of plaintiff's agent, large sums were withdrawn from the bank and deposited in other Flint banking insti-

tutions which had contributed to the fund. These amounts were eventually redeposited in the Union Industrial Trust & Savings Bank.

On the resumption of banking operations following the bank holiday proclaimed on February 14, 1933, the Union bank was one of the large number of institutions unable to open its doors. At the time of closing, plaintiff had five different deposit accounts at the bank, each of which was identified by a distinctive name. The largest, called the "St. Joseph Hospital Building Fund," was a savings account, in which there was a balance of $106,251.87, more than nine-tenths of the total on deposit. There were also a number of commercial accounts, among them a "construction department" account of $7,679.46, a "construction pay roll" account of $425.16, a "campaign expense fund" account of $431.51, and an account known as "St. Joseph Hospital account No. 2 Building Fund," amounting to $1,115.54. Plaintiff filed a bill seeking to impose a joint and several liability upon the bank and Charles S. Mott, individually, to the extent of the funds deposited. Its claim to priority in the assets of the bank is based upon a trust-fund theory.

The necessity for a hospital of the type under construction, the hardship caused by cessation of the building operations and the embarrassment of plaintiff in not being able to meet its contractual obligations arising during the completion of the building were obvious and conceded. Notwithstanding these factors, which could not fail to appeal to a court's sympathies, the trial judge held that under the law he was forced to find against plaintiff's contentions.

When the funds were collected on subscriptions, they were first deposited to the credit of the hospital building fund in the commercial account. As

the amounts on deposit in this account reached the sum of $5,000 or more, they were automatically transferred to the savings account in accordance with arrangements made with the plaintiff or its representatives. When the trustees desired to transfer funds from the savings department to their checking accounts, requisitions were made by letter. It is significant that the Sisters exercised the sole direction and control over the transfer or withdrawal of these funds. At one time, $60,000 was transferred from the savings account to the construction account and then checked against in order to make deposits in three other banks, as hereinbefore stated, and not to meet costs of construction, an indication that the various accounts were subject to checks drawn by the Sisters for purposes not strictly consistent with the titles borne by them.

There was no agreement in regard to any of the accounts of plaintiff. The bank did not agree to treat the funds as special deposits, nor to set aside the moneys therein deposited for special purposes, and refrain from commingling them with the other moneys of the bank. Inasmuch as the bank agreed to pay interest on the savings account, it must have been apparent to plaintiff that it was necessary for it to invest the moneys. While it may have been the intent of the plaintiff to use the smaller accounts for pay rolls, campaign expenses, and construction costs, there is no evidence of a duty on the part of the bank to honor only those checks issued for purposes consistent with the titles of the accounts against which they were drawn. The bank was in no position to question properly drawn checks. There was no mutual understanding nor intention at the time the accounts were opened that withdrawals could not be made by the Sisters as they saw fit, just as

if the accounts were not specially named. The presumption with reference to a bank deposit is that it is general in the absence of evidence to the contrary. *Keyes* v. *Railroad Co.* (C. C. A.), 61 Fed. (2d) 611 (86 A. L. R. 203).

In order to justify the designation of an account as a special deposit, not only its special purpose must be shown, but also an intention on the part of both parties that it must be held and used exclusively for such purposes. *Craig* v. *Bank of Granby*, 210 Mo. App. 334 (238 S. W. 507).

While there have been some fine spun distinctions drawn in a number of decisions in other jurisdictions that give certain accounts a preferred position as special deposits, we believe that the better authority is to the effect that a deposit will not be regarded as special unless made for a special purpose and with the understanding that it is to be set aside solely for that purpose and not mingled with other moneys of the bank. *Reichert* v. *American State Savings Bank*, 264 Mich. 366, 369.

Other Michigan decisions cited by appellant are not pertinent, as they involve circumstances not present in the instant case. The fact that these accounts were opened by plaintiff under special names is not sufficient in and of itself to stamp them as special deposits. Very frequently a person may open several accounts at the same bank, one for business purposes, another for household uses, etc. Frequently, a corporation, in addition to maintaining a general account, will open a pay roll or other specially designated account. Separation of funds in this manner is often accomplished for bookkeeping purposes and does not necessarily establish an intention to make a special deposit. The problem before

us was discussed in *Northern Sugar Corp.* v. *Thompson* (C. C. A.), 13 Fed. (2d) 829, in which the court said:

"In the instant case, there was no agreement between the sugar corporation and the bank that the funds deposited to cover pay roll checks should be held by the bank as a special fund, separate and apart from other general funds of the bank, or that they should be treated by the bank in any way different from a general deposit. * * *

"The sugar corporation did not expect that the funds deposited in the beet pay roll account would be paid out to any particular payee, but to various classes of persons. The checks drawn on the pay roll account were payable to farmers, laborers, to lien-holders, and to persons holding orders. The bank was at no time advised what particular persons were entitled to such payments. The sugar corporation expected the bank to honor a check drawn by it on the pay roll account, regardless of who the payee might be, and regardless of the obligation in payment of which it was given. * * *

"It is not an uncommon practice today for the large corporate organizations to carry several different accounts in the same bank. These accounts might be properly called departmental accounts. In such accounts, funds are deposited, and checked out to pay the obligations of a particular department. Thus, in a sense, these deposits are made for the purpose of paying a particular class of obligations. But it is not the intention of the parties that the bank, in accepting such deposits, shall act as the agent of the corporation, but such deposits are intended to be general deposits. The purpose of the corporation in carrying such separate accounts is not to reserve title to the deposits in itself, but to keep the transactions of its several departments

separate from each other, and to facilitate the keeping of its books and records.''

See, also, *Fralick* v. *Coeur D'Alene Bank & Trust Co.*, 36 Idaho, 108 (210 Pac. 586); *Noyes* v. *First National Bank of New York*, 180 App. Div. 162 (167 N. Y. Supp. 288), affirmed in 224 N. Y. 542 (120 N. E. 870); *American Surety Co. of New York* v. *Bank of Italy*, 63 Cal. App. 149 (218 Pac. 466).

Examination of the testimony and correspondence in the instant case leads us to the same conclusion as that reached by the trial judge, namely, that none of the deposits were special nor was there any intention to have them kept separately from the other funds of the bank. Consequently, appellant's claim of priority in the assets of the bank must fail.

We further find no liability on the part of the defendant, Mott. There is no claim that Mott diverted a single penny of the funds. He accepted the office of treasurer on his understanding that it was purely an honorary position. In his capacity as treasurer, he issued no checks and was not an officer of the campaign in any real sense. It was his duty to see that the subscriptions, when paid, were deposited in the bank to the credit of plaintiff. He fully performed this duty.

Plaintiff claims, however, that as treasurer of the campaign committee defendant was negligent, first, in selection of the depository and, second, in failing to deposit the subscriptions collected in accounts that would be unmistakably recognized and treated as special deposits. Inasmuch as the selection of the depository was made prior to defendant Mott's acceptance of his post as treasurer and inasmuch as there is no evidence to indicate that the bank was in such a condition when Mott assumed office that he should have advised a change in depositories, there

is no merit to plaintiff's claim of negligence in this respect, nor can it be claimed that Mott should have required the treatment of the funds collected as special deposits. He merely continued the same arrangement which had been approved up to the time he assumed office. Dictates of convenience and the absence of any evidence showing such a precarious situation in the bank as would have rendered it advisable to require the opening of special deposit accounts justify his failure to make any change in the status of these accounts. It is quite significant of his confidence in the bank that he and his children had almost $45,000 on deposit in the bank at the time it closed. We fail to find any testimony whatsoever tending to fasten liability on defendant Mott.

While we fully appreciate the misfortune and disaster that visits such a worthy institution in the wake of a bank failure, we are governed by legal principles and are constrained to agree with the decree of the trial court in favor of defendants. The decree dismissing the bill is affirmed.

Inasmuch as a question under the banking act is involved and the banking commissioner is a party, we shall not allow any costs.

MCDONALD, C. J., and POTTER, SHARPE, NORTH, FEAD, and WIEST, JJ., concurred with BUTZEL, J.

WEADOCK, J. I dissent because the hospital money was a trust fund.