GAUSS *v.* AMERICAN CASUALTY UNDERWRITERS.

Insurance—Reciprocal Exchanges—Distribution of Deposit for Payment of Losses.

> Statute requiring that deposit of given amount be established by reciprocal insurance exchange and be "available for the payment of losses," entitles those whose losses have been established, to have disposition made of the fund in accordance with the express intent of law without reference to doctrine of trusts and trustees (Act No. 256, pt. 5, chap. 2, § 3 (g), Pub. Acts 1917).

Appeal from Ingham; Carr (Leland W.), J. Submitted October 11, 1934. (Docket No. 133, Calendar No. 38,113.) Decided December 10, 1934.

Receivership proceedings by Charles E. Gauss, commissioner of insurance, against American Casualty Underwriters, a reciprocal insurance company. Petition by Edward Fannon, by his next friend Alfred Fannon, and Pauline Kuhs, judgment creditors, praying the sale of certain bonds and that proceeds be impressed with a trust and for the distribution of said trust fund. Petition denied. Petitioners appeal. Reversed.

*Kelley, Sessions, Warner & Eger,* for plaintiff.

*Renihan & Lilly,* for petitioner Fannon.

*George B. Gould,* for petitioner Kuhs.

Wiest, J. (*concurring*). I concur in reversal.

The statute (Act No. 256, pt. 5, chap. 2, § 3, Pub. Acts 1917) requiring the deposit, fixes and impresses thereon the purpose and such purpose con-

trols without any resort to the doctrine of trusts and trustees. Intervenors are entitled, under the law establishing the deposit, to have disposition thereof made in accord with the express intent of the law.

The deposit stands as security for liability to insured parties.

NORTH, FEAD, BUTZEL and BUSHNELL, JJ., concurred with WIEST, J.

EDWARD M. SHARPE, J. The American Casualty Underwriters, a reciprocal insurance exchange, was organized December 1, 1924, under Act No. 256, pt. 5, chap. 2, Pub. Acts 1917 (see 3 Comp. Laws 1929, § 12641 *et seq.*). At that time the law required, as a condition precedent to securing the annual "certificate of authority" from the department of insurance, the subscribers through their attorney to file with the commissioner of insurance a verified declaration setting forth among other things "that there is on deposit with such attorney and available for the payment of losses, a sum of not less than twenty-five thousand dollars." (Act No. 256, pt. 5, chap. 2, § 3(g), Pub. Acts 1917.) The insurance exchange complied with this requirement from 1924 until 1926 when the insurance department required that this amount be deposited with the Michigan Trust Company. However, subsequent to 1926 and prior to 1930 the insurance exchange purchased the following bonds: $5,000 Argentine government, external sinking fund, six per cent. gold bonds; $5,000 Kingdom of Norway 35-year five per cent. sinking fund external mortgage gold bonds; $5,000 Free State of Prussia six one-half per cent. sinking fund gold bonds; $5,000 Burt Eddy Taylor First Mortgage six per cent. gold bonds; $5,000

Washington Square Development Co. first mortgage six per cent. serial gold bonds; and deposited them with the Michigan Trust Company with like intent and purposes. When the bonds were deposited with the Michigan Trust Company, the insurance exchange wrote to the insurance department under the date of December 18, 1926, the following letter:

"December 18, 1926.

"*Dear Sir:* This will acknowledge receipt of your letter of December 15th relative to the deposit of the American Casualty Underwriters with the Michigan Trust Company. I had previously received a letter from the Michigan Trust Company in which they stated that you had requested the same information from them.

"The $25,000 deposited with the Michigan Trust Company is our guarantee fund as required by law. Prior to changing it from banks where it had previously been deposited, I took the matter up with Mr. Corell of your department, and I have made all arrangements in accordance with my conversation with him. While the deposit was with the banks they merely wrote a letter certifying to the fact that they held the money there in trust, subject to the directions of the insurance commissioner. That is the same arrangement as had been entered into with the trust company. I note that you acknowledge having received such a letter from them.

"There is nothing in the way of a trust agreement for us to file with you. With the $25,000 cash we bought bonds in like amount which we left with the bond department of the Michigan Trust Company. We having only safe-keeping receipt for the same.

"Inasmuch as they have certified that they hold this deposit subject to the directions of the insurance commissioner and as this is in conformity with the arrangement made with your department at the

time of our hearing last spring, and inasmuch as ordinarily we would have free access to our deposits, I trust that this will meet with the approval of the department.

"Very truly yours,
"THE AMERICAN CASUALTY UNDERWRITERS,
"By Secretary and general counsel."

In February, 1930, a receiver was appointed for the defendant insurance exchange and in November, 1930, came into possession of three New England Power Association bonds of the par value of $3,000 and two Florida Power & Light Company bonds of the par value of $2,000. Under the direction of the court these bonds were sold and the proceeds largely used to pay the expenses of the receivership, however, since these bonds were never a part of the $25,000 fund required under Act No. 256, Pub. Acts 1917, they are not involved in this litigation.

In December, 1930, the receiver petitioned the circuit court for an order authorizing him to sell the bonds and securities held by the Michigan Trust Company. This petition was granted and the receiver authorized to sell the bonds in parcels at the best price obtainable.

Petitioner Fannon is a judgment creditor of a member and subscriber of defendant insurance exchange. His claim is based upon a judgment recovered in the Kent circuit court in January, 1930, against Homerich and Todd and a judgment against the insurance exchange, garnishee defendant, in the sum of $5,000.

Petitioner Kuhs is also a similar judgment creditor and her claim together with that of her husband has been allowed in the sum of $2,000.

In June, 1932, petitioners' claims were allowed as losses by the receiver of the insurance exchange. In May, 1934, they filed a petition in the circuit court of Ingham county asking that the bonds and the proceeds of the bonds be impressed with a trust and be used for the payment of losses only and that a special trustee be appointed by the court to direct the sale and distribution of the bonds and proceeds thereof. The trial court denied their petition and petitioners appeal.

The principal question for this court to decide is: Was the $25,000 fund required by Act No. 256, pt. 5, chap. 2, § 3(g), Pub. Acts 1917, a trust fund for the benefit of those who suffered losses from the policy holders? And if not, can a trust be implied from the letter written by the American Casualty Underwriters to the department of insurance on December 18, 1926?

In our discussion of the issues involved, we assume that the fund now in the hands of the receiver is the same fund which originated in 1924 when the American Casualty Underwriters first complied with the statute and was authorized to do business as a reciprocal automobile insurance exchange.

"A person need use no particular form of words to create a trust or to make himself a trustee," *Faulds* v. *Dillon,* 231 Mich. 509, 522; all that is required is written evidence supplying every detail of the trust. 1 Perry on Trusts (7th Ed.), § 1. If the instrument or writing does not expressly declare a trust, but contains words from which the court can infer that it was the purpose or intent of the parties to do so, then the court will imply a trust. 1 Perry on Trusts (7th Ed.), § 25. "The doctrines of trusts are equally applicable to real and personal estate,

and the same rules will govern trusts in both kinds of property." 1 Perry on Trusts (7th Ed.), § 16. "To create a trust, there must be an assignment of designated property to a trustee with the intention of passing title thereto, to hold for the benefit of others. There must be a separation of the legal estate from the beneficial enjoyments (26 R. C. L. p. 1186)." *Equitable Trust Co.* v. *Milton Realty Co.*, 261 Mich. 571, 577.

In trusts not charitable it is not always necessary that the *cestui que trust* should be in existence at the time of the creation of the trust. 1 Perry on Trusts (7th Ed.), § 65.

When the act was passed by the legislature it was their intention to require every reciprocal insurance exchange to set aside a fund of at least $25,000 each year out of which losses could be paid. It does not contain a specific provision segregating a particular fund as a trust fund for the payment of any special class of creditors, but does use the words "deposit" and "available for the payment of losses."

In *People* v. *Covelesky*, 217 Mich. 90, 100, this court said:

"A well-recognized rule for construction of statutes is that when words are adopted having a settled, definite and well-known meaning at common law it is to be assumed they are used with the sense and meaning which they had at common law unless a contrary intent is plainly shown."

The common meaning of "available" is, capable of being used for a certain purpose, and the term "losses" has both a general and technical meaning.

" 'Loss' in insurance parlance is the pecuniary injury resulting from the occurrence of the contingency insured against, whether that contingency is (1) the death, disability or sickness of the person

injured, or (2) the destruction of, or injury to, the property insured, or (3) the legal liability to third persons to which insured has been subjected by specific events, or (4) any other contingency covered by the policy." 33 C. J. p. 7, § 648.

That part of the act pertinent to this case is part 5, chap. 2, § 3 (g), which reads, "That there is on deposit with such attorney and available for the payment of losses, a sum of not less than twenty-five thousand dollars." The letter of December 18, 1926, does not of itself create a trust fund, but is explanatory of the purpose of the fund. Taken together they contain the essential elements of a trust fund. There is first the declaration by the owner that the fund is to be used for the payment of losses. Second, the beneficiaries are those creditors whose claims have been allowed as losses, *Smith* v. *Darby*, 39 Md. 268, they are the *cestui que trustent* and as such are entitled to the benefit of the fund. In the *American Casualty Insurance Company's Case*, 82 Md. 535 (34 Atl. 778, 38 L. R. A. 97), the court held that a special fund for the benefit of policy holders of an insolvent insurance company cannot be charged with any portion of the costs and commissions incurred in administering the general fund which is totally distinct.

The decree of the lower court is reversed and the receiver is directed to sell said bonds under the direction of the court and apportion the proceeds thereof to those persons entitled thereto. Inasmuch as this is a public question no costs will be allowed.

NELSON SHARPE, C. J., and POTTER, J., concurred with EDWARD M. SHARPE, J.