WENZEL v. PEOPLES STATE BANK OF SPARTA.

1. BANKS AND BANKING—DEPOSITS—TRUSTEE EX MALEFICIO.

    Bank did not become a trustee *ex maleficio* of depositor's funds upon its refusal to pay all of legally deposited savings account and certificate of deposit after expiration of 90 days from notice given by depositor, the relationship still being one of debtor and creditor although the withholding was illegal.

2. SAME—BANK DEPOSIT PRESUMED TO BE GENERAL.

    A bank deposit is presumed to be general in the absence of evidence to the contrary.

3. SAME—SPECIAL DEPOSITS.

    In order to justify designation of a bank account as a special deposit, its special purpose must be shown and there must be an intention on the part of both parties that it must be held and used exclusively for such purpose, and it becomes a trust fund when, in addition, it is deposited with the understanding it is not to be mingled with other money of the bank.

4. SAME—TRUST FUND—EVIDENCE.
>   In suit to impress a trust upon bank's assets, evidence *held,*
>   insufficient to show that bank in financial difficulties which
>   had adopted policy of paying depositors according to their
>   individual needs, agreed to pay balance of deposit to home
>   or that home relied upon any trust fund as a basis for ac-
>   cepting plaintiff in the home.

Appeal from Kent; Perkins (Willis B.), J.   Sub-
mitted January 29, 1935.   (Docket No. 10, Calendar
No. 38,053.)   Decided March 5, 1935.

Bill by Carrie M. Wenzel against Peoples State
Bank of Sparta, Michigan, and L. A. Anderson, con-
servator, to impress a trust upon assets of bank.
Decree for plaintiff. Defendants appeal. Reversed.

*Fred P. Geib,* for plaintiff.

*William J. Branstrom,* for defendants.

EDWARD M. SHARPE, J.   Plaintiff, a depositor in
defendant bank since 1929, had on January 18, 1932,
a certificate of deposit by said bank in the sum of
$1,300.   She also had a savings account in the bank
in the sum of $160 on February 16, 1932, when she
made a written demand for the payment of her
money at the expiration of the 90-day period as re-
quired by the rules and regulations of the bank.

The bank did not comply with this demand; and
on July 28, 1932, plaintiff went to the bank and
transferred $300 from her certificate of deposit to
her savings account and a new certificate of deposit
was given to her in the sum of $1,000.   On Decem-
ber 22, 1932, she transferred her $1,000 certificate
of deposit into another savings account.   About this
time, plaintiff was negotiating with the Isabella

Home of Grand Rapids for the purpose of buying a life membership therein and had discussed the proposition with Mr. Anderson, cashier of defendant bank. As a result of this discussion, the bank began paying plaintiff at the rate of $100 per month, the first draft being paid directly to the Isabella Home by the defendant bank and the next payment of $100 being paid directly to plaintiff; however, before any more payments could be made the bank closed under the moratorium declared by the governor as of February 11, 1933. But on February 27, 1933, defendant bank sent plaintiff a draft for $40 representing five per cent. of the balance of the second savings account.

On August 2, 1933, plaintiff inquired about interest on her deposits and was advised that no additional funds could be withdrawn until the reopening of the bank on September 18, 1933; and plaintiff on September 22, 1933, filed her bill of complaint in this cause and contends that plaintiff's funds in defendant bank became trust funds by operation of law when the bank refused to pay them over to her after she (plaintiff) had given it the 90-day notice required by its by-laws.

The trial court found in favor of plaintiff, holding that the trust fund arose out of the transactions of plaintiff with Mr. Anderson, cashier of defendant bank, as of December 22, 1932, when plaintiff transferred her certificate of deposit to a savings account, and as of December 27, 1932, when defendant bank made the first payment of $100 to the home directly.

We are not impressed with plaintiff's theory that defendant bank became a trustee *ex maleficio* of plaintiff's funds upon its refusal to pay all of said funds at the expiration of the 90-day period. While it is true that defendant bank was illegally holding

plaintiff's funds, yet the relationship was nothing more than that of debtor and creditor. The case of *Reichert* v. *United Savings Bank,* 255 Mich. 685 (82 A. L. R. 33), is not authority for the theory that private money illegally withheld by a bank from a depositor thereby becomes a trust fund in the hands of the bank for that case merely holds that public moneys illegally deposited in a bank become trust funds and are entitled to preferential payment upon the insolvency of the bank, but in the instant case the funds are private and were not illegally deposited.

As we approach the next contention of plaintiff, we are met with the general rule that the presumption with reference to a bank deposit is that it is general in the absence of evidence to the contrary. *Keyes* v. *Railroad Co.* (C. C. A.), 61 Fed. (2d) 611 (86 A. L. R. 203). In order to justify the designation of an account as a special deposit, not only its special purpose must be shown, but also an intention on the part of both parties that it must be held and used exclusively for such purposes. *Craig* v. *Bank of Granby,* 210 Mo. App. 334 (238 S. W. 507), cited with approval in *Borgess Hospital* v. *Union Industrial Trust & Savings Bank,* 265 Mich. 156.

When we turn to Michigan authorities, we find in *Reichert* v. *American State Savings Bank,* 264 Mich. 366 (89 A. L. R. 1284), that a deposit will not be regarded as special unless made for a special purpose and with the understanding that it is to be set aside solely for that purpose and not mingled with other moneys of the bank. In this case the court said, "the fact that the money deposited was to be used for a specific purpose does not make it a trust fund. It becomes a trust fund only if deposited with the understanding that it should be set apart for a par-

ticular purpose and not mingled with other money of the bank.''

From an examination of the testimony and correspondence in the instant case, we find that in December, 1932, the defendant bank was having its financial difficulties and had adopted a policy of paying its depositors according to their individual needs after discussing the matter with them individually, and that Mr. Anderson, the cashier of said bank, was authorized to carry out this policy. We also find that the bank, being desirous of rendering a service to plaintiff and at the same time of inducing her to make only partial withdrawals of her money, aided her to get into the Isabella Home on a plan that would be the least harmful to the bank. Nowhere in the record do we find the defendant bank agreed to pay the Isabella Home $1,000 nor do we find the bank agreed to pay $100 per month for 10 consecutive months. The account of plaintiff's was not set aside for that special purpose, nor do we find that the Isabella Home relied upon any trust fund as a basis for accepting plaintiff in the home.

No express trust was created, and none may be implied as the record does not disclose that the money was deposited for a specific purpose and was not to be mingled with and become a part of the bank's assets.

The decree of the circuit court is reversed, with costs to defendants.

Potter, C. J., and Nelson Sharpe, North, Fead, Wiest, Butzel, and Bushnell, JJ., concurred.