GOODENOUGH *v.* UNION GUARDIAN TRUST CO.

1. Trusts—Debtor and Creditor—Reserve Accounts—Interest.
Relation of debtor and creditor existed between trust company and testamentary trustee as to funds kept by company as reserve in case of delay or default in payment of trust estates' bonds and coupons handled by it for trustee under agreement whereby remittances were made semi-monthly, interest was paid on such reserves and company received a specified sum annually for its services.

2. Principal and Agent—Trusts—Debtor and Creditor.
An agent with power to collect a chose in action for his principal and who is required to preserve the proceeds intact, pay them over or apply them for benefit of principal may be a trustee, but where agent has liberty of using proceeds as his own after collection, he becomes a debtor.

3. Trusts—Nature.
A trust, except a charitable, resulting or constructive trust, is a fiduciary relationship subjecting person holding the property to equitable duties to deal with another person, arising because of a manifestation of an intention to create it.

4. Same—Creation.
To create a trust there must be an assignment of designated property to a trustee with the intention of passing title thereto, to hold for the benefit of others.

5. Same—Subject-Matter.
Every kind of property or vested right which the law recognizes as valuable and that can be assigned may be the subject-matter of a trust.

6. Same—Trust Companies—Mingling of Funds.
Money collected by trust company as agent for bailee in handling bonds and coupons for testamentary trustee of large estates under contract that all above a certain reserved amount should be deposited to credit of trust estate accounts in a designated

bank *held,* not possessed by trust company in capacity of trustee but as debtor, in absence of understanding such collected funds while in its hands were to be ear-marked, set apart for particular purpose and not mingled with other money of the trust company.

Appeal from Wayne; Webster (Clyde I.), J. Submitted October 25, 1935. (Docket No. 44, Calendar No. 38,387.) Decided June 11, 1936.

Bill by Luman W. Goodenough, as testamentary trustee of the estates of Philip H. Gray, Paul R. Gray and David Gray, deceased, against Union Guardian Trust Company, a Michigan corporation, to impress a trust on certain funds, for an accounting and other relief. Millard E. Bowlus, Edward B. Finley, Jr., and E. Arthur Edwards, liquidating trustees of Union Guardian Trust Company, intervened as parties defendant. Bill dismissed. Plaintiff appeals. Affirmed.

*Goodenough, Voorhies, Long & Ryan,* for plaintiff.

*Shaeffer & Dahling,* for defendant.

*Lewis & Watkins (Edwin C. Lewis and Frederick W. Seitz,* of counsel), for interveners.

Edward M. Sharpe, J. The facts in this case have been stipulated and are as follows: Plaintiff is the testamentary trustee of the three Gray estates named in the title * and as such has had in his possession corporate and municipal bonds, the annual income of which has exceeded $500,000. Prior to May, 1930, plaintiff personally attended to the cus-

---

* Philip H. Gray, Paul R. Gray, David Gray, deceased.—Reporter.

tody of the bonds and clipped and collected the coupons from the same, but the labor became too burdensome and he sought out the officers of the Union Guardian Trust Company and entered into an agreement with them whereby the trust company was to handle these funds. The bonds and coupons taken over by the trust company were payable at various places throughout the United States. The trust company was directed to collect the interest and principal of the bonds as they matured and deposit the same in estate accounts in the Guardian Detroit Bank-Detroit.

However, it became apparent that the service could be more expeditiously performed if the trust company would give credit to plaintiff upon its books for the cash value of bonds and coupons upon the maturity of such obligations, and if at the time of such maturity or at semi-monthly periods, unless oftener requested, it would pay into the various bank accounts in the Guardian Detroit Bank the amounts represented by matured bonds and coupons, meantime depositing such items in its own general funds. It early became known to the parties hereto that there might be some delay in the collection of some of the coupons, thereby necessitating the return by plaintiff of moneys which the trust company had paid into the accounts on the assumption that such coupons and bonds would be paid at maturity; and as a result of this possibility plaintiff on May 22, 1930, delivered three checks to the trust company, accompanied by a letter stating that the checks were to be used in opening three accounts with the trust company, one in the name of each of the three estates, the purpose of which was to clear its coupon accounts and take care of delays or defaults in the payment of coupons. These accounts were known as

"default reserves" and bore interest at the rate of three per cent. payable semi-annually. On April 11, 1931, the arrangement with the trust company was further modified to the extent that plaintiff would not replenish the default reserves with his own remittances, but the trust company was to withhold $4,500 as a default reserve in each account when making the semi-monthly remittances. The trust company was paid $5,000 per year for its services in handling the business of the three estates.

It also appears that at various times, on special instructions from plaintiff, the trust company sold some of the bonds, received the checks for the bonds sold, deposited the same in its general bank account in the Guardian National Bank-Detroit, and gave unconditional credits to plaintiff on its books for the amounts received. From time to time the trust company rendered its statements to plaintiff pertaining to transactions with respect to disposition of bonds and coupons.

On February 10, 1933, plaintiff requested the trust company to pay to him all credit balances then shown on the accounts except the "default reserves." This request was complied with by the trust company depositing in the account of each estate, from its general fund, sums equivalent to the respective credit balances less the default reserves. On the same and following day, the trust company sold certain bonds in accordance with plaintiff's instructions deposited the checks from the sale in its own bank account, and gave plaintiff unconditional credit on its accounts with him. On February 14, 1933, the trust company closed by the governor's proclamation before any regular or special transfer of funds was made by the trust company to plaintiff's bank accounts. As a result, at the close of business on February 11, 1933,

after adjustments for the charge-backs of uncollected coupons and credits for accrued interest on the default reserves, the trust company had the following sums: Philip Gray estate $26,460.42; David Gray estate $28,047.92; and Paul R. Gray estate $4,850.

Plaintiff brought this suit to determine the nature of his claims. As to the "default reserve" fund, he concedes that it is a general claim and that the relationship of debtor and creditor existed. He claims that the funds obtained from the collection of coupons on February 10th and 11th are trust funds; that the checks which the trust company received from purchasers of specified bonds, which were sold on special instructions from plaintiff, are trust funds. Defendant claims that as to all the funds collected by the trust company, the relationship between plaintiff and defendant is that of debtor and creditor and not trustee and beneficiary. The lower court held for defendant. Plaintiff appeals.

There appears to be no dispute over the fact that under the agreement the trust company was an agent of plaintiff for the purpose of collecting certain choses in action.

"Where an agent is to sell and collect or to collect a chose in action for his principal, it is important to know whether he holds the proceeds as bailee or trustee or becomes a debtor with a duty to pay his principal out of any of his assets. If the former be the construction, the collected funds may be followed into the assets of the collecting agent on his insolvency, and debts from the principal to the agent cannot be set off against the collected money. If the latter, opposite results as to preference and set-off follow. The distinction may be important in criminal prosecutions also, since a bailee or trustee may be guilty of embezzlement but a debtor not.

"If the agent is to sell chattels or realty for his principal, receive the proceeds, and preserve them

intact to pay over to the principal or apply for his benefit, it is possible to find the selling agent to be a trustee; but, if the agent is merely to account for the proceeds and to have the liberty of using the actual coins, bills, or paper received as his own, he becomes a debtor after collection and cannot be prosecuted for embezzlement." 1 Bogert, Trusts and Trustees, p. 105.

The primary question involved in this case is, Does the agreement give the trust company the title to the proceeds to be used by it for its own benefit with a duty only to account for an equivalent amount when demanded by plaintiff?

"A trust, as the term is used in the restatement of this subject, when not qualified by the word 'charitable,' 'resulting' or 'constructive,' is a fiduciary relationship with respect to property, subjecting the person by whom the property is. held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it." 1 American Law Institute, Restatement of the Law of Trusts, p. 6.

We have recently adopted and approved the rule stated in 26 R. C. L. p. 1186:

"To create a trust, there must be an assignment of designated property to a trustee with the intention of passing title thereto, to hold for the benefit of others." *Equitable Trust Co.* v. *Milton Realty Co.*, 261 Mich. 571, and *Gauss* v. *American Casualty Underwriters*, 269 Mich. 484.

"Every kind of valuable property, both real and personal, that can be assigned at law may be the subject-matter of a trust. Every kind of vested right which the law recognizes as valuable may be transferred in trust, as a receipt (recipe?) for a medicine, the copyrights of a book, a patent right,

a trade secret, or growing crops." 1 Perry on
Trusts (7th Ed.), p. 52.

In *Reichert* v. *American State Savings Bank*, 264
Mich. 366 (89 A. L. R. 1284), we said:

"It is a proper presumption that the W. T. Grant
Company knew the specified deposit would be min-
gled with other funds of the bank and that remit-
tance would be made in the customary way by draft.
We think the facts are not consistent with the ex-
istence of a trust but show the relationship of debtor
and creditor. The fact that the money deposited
was to be used for a specific purpose does not make
it a trust fund. It becomes a trust fund only if
deposited with the understanding that it should be
set apart for a particular purpose and not mingled
with other money of the bank."

See, also, *Wenzel* v. *Peoples State Bank of Sparta*,
270 Mich. 424.

In this cause the final modification of arrange-
ments was made on April 11, 1931, and as a result
the trust company thereafter withheld $4,500 in each
estate's account and transmitted the remainder,
when making the semi-monthly transfer from the
company's account with plaintiff to his account in
the bank. Moreover, the stipulated, facts show that,
"The trust company received checks for the bonds
and deposited same in its general bank account in
Guardian National Bank-Detroit and gave uncon-
ditional credits to plaintiff on its books for the
amounts received, in accordance with the arrange-
ments." The trial court found as a fact that, "At
various times, on special instructions from the plain-
tiff, the trust company sold some of the bonds,
crediting plaintiff's accounts when the proceeds of
the sales were actually received by the trust com-

pany. Such credits were considered and cleared like ordinary credits to the accounts."

In our opinion the record clearly shows that the transactions involved in this cause are not those of an ordinary bailee of bonds, but are those of a bailee acting in accordance with the terms of a special agreement. Moreover the fact that at times plaintiff received the trust company's money in payment for coupons before they were collected, and in the event that they were not collected the trust company charged the amount of them back to plaintiff's account to be later repaid out of his credits is indicative of the relationship of debtor and creditor. We find nothing in the arrangement whereby the trust company was to keep these funds segregated and ear-marked for the benefit of plaintiff.

In *National Butchers & Drovers' Bank* v. *Hubbell,* 117 N. Y. 384 (22 N. E. 1031, 7 L. R. A. 852, 15 Am. St. Rep. 515), the court said:

"As to the moneys received by the firm in payment of checks and drafts sent to it for collection by the plaintiff and by the firm paid out before the assignment, and in the usual course of business in payment of the debts of the firm, and, of course, never received by the assignee, we do not see that the plaintiff occupies any different position in that regard towards the firm than any other creditor. As the firm was to remit but once a week, of course it was not expected that the identical moneys received by it in payment of paper sent to it for collection, were to be sent to the plaintiff. The firm, by the arrangement, had the right to retain the moneys and to remit weekly, and, of course, from one week to another it had the right to use the money, and the plaintiff relied upon the credit of the firm for such time as it had the right to retain the money."

In our opinion the relationship between the parties hereto was that of debtor and creditor and the decree of the trial court is affirmed, with costs to appellees.

NORTH, C. J., and FEAD, WIEST, BUTZEL, BUSHNELL, and TOY, JJ., concurred. POTTER, J., took no part in this decision.