PORTAGE ALUMINUM COMPANY v KENTWOOD NATIONAL
BANK

CARL WALKER & ASSOCIATES v KENTWOOD NATIONAL BANK

Docket Nos. 45694, 45695. Submitted November 7, 1980, at Grand
Rapids.—Decided May 11, 1981. Leave to appeal applied for.

The Portage Aluminum Company and Yoder Research, Inc., and
Carl Walker & Associates brought actions against the Kent-
wood National Bank for damages resulting from defendant's
breach of contract, breach of a fiduciary duty, negligence, and
fraud and conversion in administering a checking account of
Computer Payroll and Accounting Systems, Inc. The W. E.
Upjohn Institute, the Clausing Corporatin, the Otto Kihm Tire
Company, South Haven Community Hospital, Knapper Lee,
Inc., Lee's Inc., Southwestern Michigan Council of Boy Scouts,
the Alexander Dobbs Company, Landscape Forms, Inc., Meyer
Hecht, and Manatron, Inc., intervened as parties plaintiff in
the Portage/Yoder action. The cases were consolidated in the
trial court. Plaintiffs and intervening plaintiffs were customers
of Computer Payroll, which company calculated and prepared
their payroll checks. Computer Payroll was forced into involun-
tary bankruptcy. Kalamazoo Circuit Court, Robert L. Borsos, J.,
found that defendant was liable for breach of a fiduciary duty
and for negligence. Defendant appeals both actions. The ap-
peals were consolidated by the Court of Appeals. Held:

1. The trial court erred in holding defendant liable for breach
of a fiduciary duty to the customers of its depositor. The
account of the depositor was not a trust account and there was
no showing of fraud, bad faith, connivance, or personal benefit
such as to impose a fiduciary duty upon defendant.

2. The trial court erred in holding defendant liable for

REFERENCES FOR POINTS IN HEADNOTES

[1] 76 Am Jur 2d, Trusts § 2.
[2-4] 10 Am Jur 2d, Banks § 390.
   76 Am Jur 2d, Trusts §§ 367, 370.
   Construction and effect of UCC Art 4, dealing with bank deposits
   and collections. 18 ALR3d 1376.
[5] 74 Am Jur 2d, Torts §§ 8, 9, 51-55.
[6] 10 Am Jur 2d, Banks §§ 568, 571.

negligence. The defendant had no duty owing to plaintiffs upon which to predicate tort liability.

Reversed and remanded.

1. TRUSTS — FIDUCIARY RELATIONSHIPS.

A fiduciary duty may arise out of a relationship subsisting between two parties of such a character that each must repose trust and confidence in the other and must exercise a corresponding degree of fairness and good faith.

2. BANKS AND BANKING — DEPOSIT ACCOUNTS — TRUST FUNDS.

Money deposited in a bank account becomes a trust fund only where it is deposited on the understanding that it is to be set apart for a particular purpose and not to be commingled with other money of the bank.

3. BANKS AND BANKING — PAYROLL ACCOUNTS — TRUST ACCOUNTS.

The designation of a bank account as a payroll account is insufficient to convert the account into a "trust-type" account thereby creating special duties on the part of the bank, absent an agreement or intention of the bank or its depositor to create a trust account.

4. BANKS AND BANKING — DEPOSIT ACCOUNTS — FIDUCIARIES.

A bank's knowledge that moneys deposited with it were acquired by the depositor in a fiduciary capacity does not impose any special obligations on the bank or give it the right to inquire into the conduct of the depositor in order to protect those for whom the funds are held and between whom and the bank there is no privity.

5. TORTS — TORT LIABILITY.

A fundamental requisite for tort liability is the existence of a duty predicated upon a legal relationship between parties which imposes a legal obligation on one party for the benefit of the other and the breach thereof.

6. BANKS AND BANKING — NEGOTIABLE INSTRUMENTS — DISHONOR — HOLDERS — TORTS.

A drawee bank has no duty to the holder of checks dishonored for insufficient funds which could result in tort liability beyond the duty to return the instruments, absent an agreement, undertaking, or contract between the parties from which a special duty could be derived.

*Fox, Thompson, Stover & O'Connor,* for plaintiffs.

*McClintock, Donovan, Carson & Roach,* for defendant.

Before: D. E. Holbrook, Jr., P.J., and V. J. Brennan and R. C. Hotchkiss,* JJ.

V. J. Brennan, J. Defendant appeals as of right from a judgment finding it liable to plaintiffs for damages based upon a breach of fiduciary duty and negligence.

This action was initially brought by two former customers of Computer Payroll and Accounting Systems, Inc. (hereinafter CPAS) against defendant bank. CPAS had previously arranged with plaintiffs, all employers, to perform designated payroll services. CPAS, on behalf of the employers, would calculate and pay the employees' federal, state, and local withholding taxes, calculate the employees' net pay, and prepare the net payroll checks. Plaintiffs would then issue checks made payable to CPAS in the amount of the payroll and CPAS's service fee. Plaintiffs and CPAS would then simultaneously exchange these checks. CPAS maintained its primary general account at defendant bank. The employees' payroll checks were drawn on this account, and plaintiffs' corresponding covering checks were likewise deposited in this account. The checks delivered to CPAS from plaintiffs were usually deposited on the same day they were given. Because of the time element, defendant began to encounter some difficulties with the account in the summer of 1975. One problem involved uncollected funds, where a check representing sufficient funding had been deposited but the bank on which it was drawn had not yet paid. Another problem was overdrafting, where the cov-

* Circuit judge, sitting on the Court of Appeals by assignment.

ering check had not even been deposited but the payroll checks had been issued and were being cashed.

Thereafter began a series of meetings and telephone conversations between defendant bank and CPAS in an effort to resolve the funding of this account.

Subsequently, on December 17, 1975, the national bank examiners instructed the defendant bank that the primary account must be closed. The next day the account was closed, and defendant returned all payroll checks presented from December 17, 1975, forward. In January, 1976, CPAS was forced into involuntary bankruptcy. Soon thereafter, plaintiffs filed the instant complaints alleging defendant bank's liability predicated on breach of contract, breach of fiduciary duty, negligence, and fraud and conversion. CPAS, because of the involuntary bankruptcy, was never made a party defendant. The lower court found in favor of plaintiffs as to liability for breach of fiduciary duty and negligence. The defendant appeals as of right from this judgment.

Essentially, only two issues are before this Court. The first is whether the trial court erred in its finding that defendant bank owed a fiduciary duty to the customers of its depositor, CPAS. The trial court acknowledged that traditional banking laws would protect defendant from such liability. However, it found that the circumstances of the case took it outside of traditional banking laws. Rather, it concluded that the bank had a fiduciary duty toward the plaintiffs. The trial court reasoned that the account was in the nature of a trust and held the defendant bank to a "fiduciary duty". It opined that the fiduciary duty flowed from such facts as that CPAS was in a new type of business,

that CPAS's business necessitated the use of banking channels, that the sole purpose of the account was to furnish a payroll service, and that defendant knew or should have known that numerous separate employees were indirectly putting money into the account via CPAS.

While neither the industry of counsel nor our own research has resulted in finding any case which deals with the precise issue we are called upon to decide, we are unpersuaded that any of the above facts, either individually or collectively, are sufficient to take the instant case out of the realm of traditional banking laws so as to create a fiduciary duty in favor of CPAS's customers.

A fiduciary duty arises where there is a fiduciary relationship between the parties. Familiar examples are: trustees to beneficiaries, guardians to wards, attorney to clients, and doctors to patients. The duty arises out of the relation subsisting between two persons of such a character that each must repose trust and confidence in the other and must exercise a corresponding degree of fairness and good faith. Black's Law Dictionary (4th ed), pp 753-754.

In the instant case, there was no relationship whatsoever between the plaintiffs and defendant bank. Defendant bank did not even know the identity of the plaintiffs nor that they were customers of CPAS. While it is true that the defendant bank could have learned the identity of the customers of CPAS, such an investigation would neither have been proper nor required. It is generally no business of a bank to pry into the affairs of depository customers to determine who the customers of the depositor are or to act on behalf of such persons. In the instant case, we find no privity between plaintiffs and defendant bank on which to base a fiduciary relationship.

Also, the nature of CPAS's business and its need for use of banking services does not automatically create a fiduciary duty on the part of defendant bank. Other businesses, such as check cashing companies, savings and loan associations, credit unions, escrow agents, and money order companies, are not so dissimilar as to their nature and need. Yet the courts have not imposed fiduciary duties upon their depository banks.

Nor do any of the facts surrounding this case lead us to conclude that CPAS's general account with defendant bank possessed any special "trust" qualities. The fact that the money deposited in the account was intended to be used for a specific purpose by CPAS does not make it a trust fund on behalf of defendant bank. The money deposited becomes a trust fund only if it had been deposited with defendant bank on the understanding that it should be set apart for a particular purpose and not commingled with other money of the bank. A trust cannot be implied unless the understanding was that the money deposited for a specific purpose was not to be mingled. *Reichert v American State Savings Bank,* 264 Mich 366, 368-369; 249 NW 876 (1933), *Goodenough v Union Guardian Trust Co,* 275 Mich 698, 704; 267 NW 772 (1936). On the evidence in record, there is no showing of either an agreement or an intention of defendant bank or its depositor, CPAS, to set the account up as a trust account. Under Michigan law, the mere fact that some of the checks had "payroll account" printed on them is clearly insufficient to convert the account into a "trust-type" account and to create special duties on the part of defendant bank. *Borgess Hospital v Union Industrial Trust & Savings Bank,* 265 Mich 156; 251 NW 363 (1933).

While we have found no Michigan cases pre-

cisely on point, *Columbia Land Co v Empson,* 305 Mich 220; 9 NW2d 452 (1943), is instructive. In *Columbia,* the Michigan Supreme Court refused to recognize liability on the part of the defendant bank running in favor of plaintiff corporation based upon the malfeasance of the depositor. The Court noted that the bank had no duty toward third parties absent a showing of special tenuating circumstances, *viz:* fraud, bad faith, connivance, personal benefit or collusion. The Court noted that the bare fact that the depositor itself was a fiduciary did not create any special obligations on the part of the bank for the protection of third parties. The Court cited approvingly the following applicable rule of law:

" 'The mere fact, however, that a bank knows that moneys deposited with it have by a depositor been acquired in a fiduciary capacity does not impose on it the duty, or give it the right, to institute an inquiry into the conduct of its customer in order to protect those for whom he may hold the fund, but between whom and the bank there is no privity.' 26 RCL, § 174, p 1316." *Id.,* 229.

Careful consideration of both the factual and legal aspects of this issue convinces us that nothing alleged nor proven imposes a fiduciary duty upon the defendant bank. To so hold defendant liable under the facts of this case is too radical a departure from well-established, traditional banking laws. The admonition of Justice NORTH aptly describes our concern with the ramifications of the trial court's decision.

"It is too obvious for argument that except the rule [nonliability] announced in the above-cited authorities is followed, a bank accepting a deposit under the circumstances of the instant case would be compelled to do

one of two things. It would be compelled to accept and administer the deposit at its peril or to act as a 'supersnooper' by way of investigating each transaction related to such an account. The banking business of the country should not be hampered or penalized by the adoption of so harsh a rule." *Seaboard Surety Co v State Savings Bank of Ann Arbor,* 307 Mich 48, 58-59; 11 NW2d 321 (1943), dissent of NORTH, J.

The second issue before this Court is whether the trial court erred in finding that defendant bank breached a "business duty" to plaintiffs. A reading of the trial court's decision indicates that it reasoned upon the basis of tort liability, *i.e.,* negligence.

A fundamental requisite for tort liability is the existence of a duty owing from a defendant to a plaintiff. The element of "duty" is predicated upon a legal relationship between the parties which imposes upon one party a legal obligation for the benefit of the other party. *Moning v Alfono,* 400 Mich 425, 436-439; 254 NW2d 759 (1977), *Clark v Dalman,* 379 Mich 251, 260; 250 NW2d 755 (1967). However, in the context of the facts and circumstances of the instant case as previously noted, we are unable to find any evidence of a relationship, agreement, undertaking, or contract on which we can impose a general duty running from defendant bank to plaintiffs. Indeed, the only relationship which we can discern is the narrow one governed by the Uniform Commercial Code: plaintiffs were the holders of dishonored checks upon which the bank was the drawee. MCL 440.3101 *et seq.;* MSA 19.3101 *et seq.,* MCL 440.4101 *et seq.;* MSA 19.4101 *et seq.* Since liability was neither alleged nor found on this ground, this statutory duty is not before this Court.

A case similar to the instant case is *Pennsylva-*

*nia National Turf Club, Inc v Bank of West Jersey,*
158 NJ Super 196; 385 A2d 931 (1978). In that
case, the bank was sued on the basis of negligence
in allowing a depositor, Mr. Zeek, to overdraw his
account by substantial margins, which culminated
in substantial damage to the plaintiff. The lower
court reasoned that the bank's pattern of conduct
in handling the Zeek account throughout its exis-
tence constituted a negligent failure to exercise
reasonable care which, in turn, permitted Zeek to
carry out his scheme, causing damage to the plain-
tiff. The appellate court rejected this negligence
theory, instead holding that regardless of the man-
ner in which the bank handled the Zeek account
the bank owed no duty to the plaintiff giving rise
to an action in negligence. The court stated:

"However, a fundamental requisite for tort liability is
the existence of a duty owing from defendant to plain-
tiff. [Citations omitted.] In the context of the record
facts herein, the bank owed no general duty to Turf
Club by way of warning or other notice, merely because
the latter undertook to cash its depositor's checks,
which turned out to be dishonored for insufficient funds.
Beyond the duty relating to return of the instruments,
the drawee bank herein had no duty arising out of a
relationship to the holder of the checks which could
ripen into tort liability. In the absence of evidence of any
agreement, undertaking or contract between plaintiff
and defendant from which any special duty can be
derived, the improper handling of the Zeek account
cannot in the abstract serve as a stepping stone for
liability to plaintiff." *Id.,* 203.

We adopt both the holding and rationale as set
forth by the *Turf* Court. Therefore, we conclude
that the trial court erred and that the bank can-
not be held liable to the plaintiffs under a legal
theory of negligence. We find the record barren of

any unique relationship by which we can factually distinguish the instant case from other commercial transactions regulated by traditional banking laws and the Uniform Commercial Code. Again, we reiterate that to hold defendant liable under these facts is too radical a departure from well-established law.

Under the facts and circumstances of this case, we are unable to find the requisite relationship between plaintiffs and defendant necessary for either a fiduciary or negligence theory of recovery. Since this is fatal to plaintiffs' cause of action, it is unnecessary to consider the corollary issues raised on appeal.

The judgment below is reversed, and the case remanded for entry of judgment in favor of defendant.

Costs to be paid by plaintiffs.