COLUMBIA LAND CO. *v.* EMPSON.

1. APPEAL AND ERROR—QUESTIONS REVIEWABLE.
    Consideration on appeal from order dismissing declaration containing two counts is limited to the first count on express contract where no issue is raised as to whether second count on implied contract sets up a proper cause of action.

2. BANKS AND BANKING—CORPORATIONS—OFFICERS—DEPOSIT OF FUNDS.
    The mere fact that a corporate officer who is fully authorized to receive money, indorse checks in the name of the corporation, deposit funds in the bank, pay out money for the corporation and handle its finances, deposits corporate checks in his personal account is not sufficient to charge the bank with notice that he intends to misappropriate corporate funds and the bank is not liable for the misappropriation of the corporate funds in the absence of any statute declaring such liability.

3. CORPORATIONS—TRUSTEES—OFFICERS.
    The secretary-treasurer of a corporation who was authorized to handle its funds and had charge of its books and accounts and who deposited checks drawn to corporation in his personal account in bank which is not shown to have had other direct relations with the corporation was, in effect, a trustee of the corporate funds.

4. TRUSTS—DEPOSIT IN TRUSTEE'S PERSONAL ACCOUNT IN BANK—BREACH OF TRUST—NOTICE.
    Although a bank knows that the funds deposited with it are trust funds and the deposit is made in the name of the trustee personally, the bank is not bound to make inquiry whether the trustee is committing a breach of trust in making the deposit and although the deposit is made in breach of trust, the bank in receiving the deposit is not liable for participation in the breach of trust, in the absence of further circumstances known to the bank indicating the trustee is committing a breach of trust.

5. SAME—DEPOSITS IN BANK—PRIVITY WITH CESTUI.

A bank's knowledge that moneys deposited with it have been acquired by a depositor in a fiduciary capacity does not impose on it the duty, or give it the right, to institute an inquiry into the conduct of its customer in order to protect those for whom he may hold the fund, but between whom and the bank there is no privity, as the bank has a right to presume that the fiduciary will apply the funds to their proper purposes under the trust.

6. EXECUTORS AND ADMINISTRATORS—PERSONAL BANK ACCOUNT—REMEDY.

Since the executrix of a deceased person's will is entitled to take possession of bank deposits standing in such person's name, one claiming a remedy against such personal account must pursue it by filing a claim in the probate court.

7. SAME—PARTIES—JOINDER—STATUTES.

Declaration of corporation which sued executrix of estate of its deceased secretary-treasurer and bank in which such officer had deposited corporate funds in his personal account over a period of 14 years for sum alleged to have been misappropriated by such officer that failed to state cause of action against bank, having been properly dismissed as to such bank, was also properly dismissed as to executrix in view of statute denying right to sue an executrix as party defendant except as other party be properly joined (Act No. 288, chap. 8, § 22, Pub. Acts 1939).

Appeal from Delta; Bell (Frank A.), J. Submitted January 12, 1943. (Docket No. 47, Calendar No. 42,192.) Decided April 6, 1943. Rehearing denied June 7, 1943.

Case by Columbia Land Company, a Michigan corporation, against Eda N. Empson, executrix of the estate of G. Raymond Empson, deceased, and Gladstone State Savings Bank, a Michigan corporation, for money alleged to have been misappropriated by deceased and deposited in defendant bank. Judgment for defendant. Plaintiff appeals. Affirmed.

*Doyle & Doyle,* for plaintiff.

*Glenn W. Jackson* (*Edward A. Smith,* of counsel), for defendants.

BOYLES, C. J.  This suit was brought by plaintiff corporation to recover $17,500 alleged to have been misappropriated by its deceased secretary-treasurer. The executrix of the estate of the deceased and the bank in which the deceased deposited the corporation's funds in his individual name are joined as defendants. Plaintiff appeals from an order dismissing the suit on the ground that the declaration failed to state a cause of action against the bank.

G. Raymond Empson was the secretary-treasurer of plaintiff corporation from December, 1923, continuously until his death, testate, in 1937. His will was duly admitted to probate, defendant Eda N. Empson confirmed as executrix, and the estate is still in process of administration. In 1940 plaintiff corporation filed a claim in probate court against his estate for $17,500, plus interest, claimed to be money received by the deceased belonging to the corporation, deposited in defendant bank by the deceased in his own name and then withdrawn by deceased and converted to his own use. In probate court the executrix filed a denial of liability, and claimed a setoff on behalf of the deceased for services performed as secretary-treasurer of plaintiff corporation. Notice of the pendency of the instant suit has been duly filed in probate court, and the above claim is still pending in probate court awaiting the outcome of the present suit.

In March, 1942, plaintiff started this suit and filed

the declaration now in question. It sets up the foregoing factual situation, alleges that the deceased had always had charge and management of plaintiff's books and accounts, received all moneys due the plaintiff, had withheld and misappropriated certain moneys to his own use and failed to render an accounting. The declaration alleges 14 specific instances from May 14, 1932, to October 21, 1937, in which G. R. Empson, as its secretary-treasurer, received checks totaling $53,289.46; that in each instance the check was payable to plaintiff in its corporate name, delivered to Empson as its secretary-treasurer, indorsed on the back in the name of the corporation, "by G. R. Empson, Sec. & Treas.," deposited by Empson with the defendant bank; that thereupon the bank entered the same to the account of G. R. Empson "as by deceased then and there instructed," and that thereafter the deceased withdrew from the bank a part of the proceeds of each such check and unlawfully appropriated the same to his own use. The corporation had no account with the bank in its own name, the proceeds of the checks were deposited and credited to the individual account of G. R. Empson, and the declaration alleges the proceeds withdrawn by Empson and converted to his own use, not accounted for, amounted in the aggregate to $17,500.

The above claims were set up in the first count of the declaration. A second count for money lent, for money then and there received by defendant for plaintiff's use, was added. However, no issue is raised as to whether the second count sets up a proper cause of action, and consideration on appeal is limited to the first count.

The sole question of law on this appeal is narrowed by plaintiff-appellant as follows:

"The trial court in his opinion recognizes that the declaration states a cause of action against the executrix.

"The trial court, however, finds that it states no cause of action against defendant bank.

"Plaintiff recognizes that if the declaration states a cause of action against the executrix, but none against the bank, the whole action must fail because of the provisions of Act No. 288, chap. 8, § 22, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 16289–8 [22], Stat. Ann. 1942 Cum. Supp. § 27.3178 [432]), * * * that no action shall be commenced against the executrix 'except * * * any other action in which the deceased might properly be joined with others as a party defendant.'

"Therefore, we submit that we need inquire only whether the declaration states a cause of action against the bank; and whether deceased might have been properly joined with the bank."

There is no allegation in the declaration that there was any actual bad faith on the part of the bank or any of its officers, no claim that the bank benefited in any way, either directly or indirectly, because of the shortage and failure to account, no claim that the bank officers knew of any misappropriation or that they were put upon inquiry, no claim that the plaintiff had any account in the bank or in any other bank, no claim that there was any concerted action of the bank or its officers and the deceased, no claim that the bank had any warning that deceased was not accounting for the funds belonging to the plaintiff. There is no claim of any contractual relation between the plaintiff and the bank. The declaration makes no express claim of fraud, bad faith, connivance, personal benefit or gain, on the part of the bank or any of its officers, directors or employees. It is not claimed that Empson owed the bank, or that the bank applied the de-

posit to his debt. No claim is asserted that anyone on behalf of the bank ever had any notice or knowledge, or reason to suspect that G. R. Empson was misappropriating corporate funds to his own use. It is apparent from the declaration that for a period of about 14 years the corporate officers and directors allowed the deceased secretary-treasurer sole charge of its books, accounts and finances. The declaration also shows that during the last 5½ years of this period of time, out of certain specified checks totaling $53,289.46 deposited in defendant bank in his own name, the secretary-treasurer paid out $35,789.46 for corporate uses. He had authority to receive money and indorse checks; and the $35,789.46 paid out by him for corporate uses out of the account standing in his individual name obviously was paid out by his individual checks. Under these circumstances, is the bank liable to the corporation for any breach of trust, breach of contract express or implied, tortious act, or failure of any legal duty owing by it to plaintiff corporation?

None of the usual elements appears in this case that are present where banks have been held liable. In some instances the corporate officer or agent had no authority to receive and indorse checks, or restrictions had been placed on such authority to handle funds, the corporation had an account in the same bank, some benefit inured to the bank from proceeds of the misappropriation, or bad faith, fraud or collusion was alleged. In the case at bar there is no allegation that the secretary-treasurer lacked authority to indorse the checks, or that the corporation had placed restrictions on the secretary-treasurer with reference to handling its funds, or that the corporation had a bank account in its corporate name, or that the corporation had other direct contractual relations with the bank, or that the

bank had notice that Empson was not applying the funds to corporate uses, or that the bank was being benefited in any way, or that there was some fraud or collusion between Empson and the bank. Many decisions holding the bank liable are grounded on one or more of the above elements.

In the absence of any statute declaring such liability, the mere fact that a corporate officer, who is fully authorized to receive money, indorse checks in the name of the corporation, deposit funds in the bank, pay out money for the corporation, and handle its finances, deposits corporate checks in his personal account is not sufficient to charge the bank with notice that he intends to misappropriate corporate funds, and the bank is not liable for the misappropriation of the corporate funds.

*McIntosh* v. *Detroit Savings Bank*, 247 Mich. 10, is readily distinguishable from the instant case. This court there held (syllabus):

"Under the uniform partnership act (Comp. Laws Supp. 1922, § 7966 [9 (1, 2)]), * a bank with which a partnership did business is not liable for the misappropriation of money received by one of the partners in cash by indorsing partnership checks, since he is an agent of the partnership and was apparently carrying on the business of the partnership, but where the partner indorsed partnership checks and deposited the proceeds to the credit of his personal account the bank is liable, since it is chargeable with notice that such action was not apparently for the carrying on of the business of the partnership in the usual way."

The controlling opinion in that case was based on a provision in the uniform partnership act (2 Comp. Laws 1929, § 9849 [Stat. Ann. § 20.9]) as follows:

---

* The cited statute is Act No. 72, § 9, subds. 1, 2, Pub. Acts 1917 (2 Comp. Laws 1929, § 9849 [Stat. Ann. § 20.9]).—REPORTER.

"(2) An act of a partner which is not apparently for the carrying on of the business of the partnership in the usual way does not bind the partnership unless authorized by the other partners."

Mr. Justice POTTER, summarizing the above law relating to partnerships, concluded (p. 13):

"If the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority, then his acts do not bind the partnership."

A concurring opinion placed decision on the following ground (p. 18):

"The so-called signature card set forth in the opinion of Mr. Justice POTTER was an agreement between the bank and the firm by which the bank was authorized by the partners and the partnership, and only authorized, to pay out the firm's money on a firm signature there agreed upon. The bank breached this agreement to the damage of the plaintiff and the partnership. It should respond in this action."

In a further concurring opinion it was stated (p. 21):

"The rule applicable to the acts or corporate officers, trustees, et cetera, does not apply to partnerships."

There is no similarity between the above case and the case at bar, because there is no provision in our statute law applying to acts of corporate officers comparable to the provisions of the uniform partnership act that controlled the above decision. The authority or agency of a partner to bind the partnership is not here involved. Nor do the facts in the *McIntosh Case* fit in with the case at bar, because in that case the partnership had an account in the bank

in its own name, the signatures of both partners were required, the partnership itself was indebted to the bank and had contractual dealings with the bank in the partnership name.

Under the method pursued by plaintiff corporation in handling its funds, its secretary-treasurer in effect became a trustee of the funds, for the use of the corporation. The weight of authority is summed up by the American Law Institute in 2 Restatement of the Law of Trusts, § 324, comment d, pp. 966–967, as follows:

"*Deposit in personal account.* Although the bank knows that the funds deposited are trust funds, and the deposit is made in the name of the trustee personally, the bank is not bound to make inquiry whether the trustee is committing a breach of trust in making the deposit; and although the deposit is made in breach of trust, the bank in receiving the deposit is not liable for participation in the breach of trust, in the absence of further circumstances known to the bank indicating that the trustee is committing a breach of trust.

"Thus, if a trustee indorses a check payable to him as trustee and deposits it in a bank to the credit of his personal account, the bank is not bound to make inquiry whether the trustee is committing a breach of trust in making the deposit; and although the trustee in fact commits a breach of trust in making the deposit, the bank is not liable for participation in the breach of trust in the absence of further circumstances known to the bank indicating that the trustee is committing a breach of trust."

Empson was drawing checks on his personal account for the use of plaintiff corporation. The bank's records showed withdrawal of approximately $35,000 out of about $53,000 in Empson's personal account, for corporate uses. There is no allega-

tion that the bank had any reason to suspect that any portion of the funds was being withdrawn for Empson's personal use, or that he was misappropriating any portion of the deposits. The bank had the right to assume that Empson was dealing honestly with the corporation, and the mere deposit of corporate funds in his name and the withdrawal of the same was not notice to the bank of an intention to misappropriate the same. It had the right to assume that he would apply the $17,500 to the uses of the corporation the same as he admittedly applied approximately $35,000 of the deposits.

"The mere fact, however, that a bank knows that moneys deposited with it have by a depositor been acquired in a fiduciary capacity does not impose on it the duty, or give it the right, to institute an inquiry into the conduct of its customer in order to protect those for whom he may hold the fund, but between whom and the bank there is no privity." 26 R. C. L. § 174, p. 1316.

"It results from the principles of law decided in these cases, and many others which might be cited, that a trustee may legally deposit the trust funds in a bank to his individual account and credit, and that the knowledge on the part of the bank of the nature of the fund received and credited does not affect the character of the act. The reason is that the bank has the right to presume that the fiduciary will apply the funds to their proper purposes under the trust. * * *

"It is not claimed or proved that the bank received any benefit from the conversion of the funds by Myers. The record does not show that the bank, in any way, participated in the conversion of the funds or had any actual knowledge that Myers was checking out the funds for his individual benefit. The officers of the bank knew, in a general way, that

the funds were being checked out by Myers to pay debts owed by the city of Helena, and they did not make any investigation to see that all the amounts checked out were applied to the payment of the debts of the city.   *   *   *

"It is insisted that the bank must have seen to the proper application of the funds, because it allowed Myers to deposit them in his individual name and to check them out that way.  We do not think that this was sufficient to put the bank upon inquiry and to charge it with knowledge that Myers was misappropriating the funds belonging to the city." *Helena* v. *First National Bank of Helena,* 173 Ark. 197, 201 (292 S. W. 140).

See, also, *White-Dulany Co.* v. *Craigmont State Bank,* 48 Idaho, 100 (279 Pac. 621); *Ogden* v. *Atlantic National Bank,* 276 Mass. 130 (176 N. E. 799); *Wheeler Motor Sales Co.* v. *Guerguin* (Tex. Civ. App.), 16 S. W. (2d) 309; *Kendall* v. *Fidelity Trust Co.,* 230 Mass. 238 (119 N. E. 861); 64 A. L. R. p. 1404; 106 A. L. R. p. 836; 115 A. L. R. p. 648; *McCullam* v. *Third National Bank,* 209 Mo. App. 266 (237 S. W. 1051).

The declaration does not allege that there is still a balance in Empson's individual account.  Nor does it seek recovery from the bank on that ground.  If that be the fact, the executrix of Empson's estate was entitled to, and doubtless has taken possession of, bank deposits standing in Empson's name, and plaintiff's remedy against the personal account lies in its claim filed in the probate court.  The declaration fails to state a cause of action against the bank and the court did not err in granting the motion to dismiss as to the bank.  Act No. 288, chap. 8, § 22, Pub. Acts 1939, denies the right to bring the instant suit against the executrix except that the bank might be properly joined as a party defendant.  This re-

quires dismissal of the present suit as to the executrix. Plaintiff's remedy against the estate is in the probate court.

Judgment affirmed, with costs to appellees.

CHANDLER, NORTH, STARR, WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.