SEABOARD SURETY CO. *v.* STATE SAVINGS BANK OF
ANN ARBOR.

COUNTIES—DEFALCATION OF CLERK—STATUTES—PRIVATE CHECKING
ACCOUNT.

> In action against bank by surety of county clerk, as subrogee
> of county, for clerk's defalcation, judgment for plaintiff
> is affirmed by CHANDLER, WIEST, and BUSHNELL, JJ., because
> of statutes pertaining to the handling of county funds of
> which the bank must be held to have had cognizance notwith-
> standing county had not designated defendant as a depositary,
> and by BOYLES, C. J., and SHARPE, J., because bank was put
> upon notice from the face of the checks deposited in clerk's
> private account that they were public funds (1 Comp. Laws
> 1929, §§ 1193, 1266, 1313).

NORTH, STARR, and BUTZEL, JJ., dissenting.

Appeal from Washtenaw; Sample (George W.),
J. Submitted June 9, 1943. (Docket No. 36, Cal-
endar No. 42,187.) Decided October 11, 1943. Re-
hearing denied November 29, 1943.

Action by Seaboard Surety Company against
State Savings Bank of Ann Arbor for amount of
public funds deposited by the county clerk in his
private account and used for his personal use.
Judgment for plaintiff. Defendant appeals. Af-
firmed.

*Alexander, McCaslin, Cholette & Buchanan,* for
plaintiff.

Liability of depositaries for participation in breach of trust, see
2 Restatement, Trusts, § 324.

Subrogation of surety to rights of creditor against persons other
than principal whose negligence has made them liable to the creditor
for the same default, see Restatement, Security, § 141 (c) and com-
ment on clause (c), illustration 17.

*Frank B. DeVine* (*John W. Conlin* and *Burke &
Burke,* of counsel), for defendant.

Wiest, J.   In 1937, Emmett M. Gibb was the
Washtenaw county clerk and plaintiff herein was
surety on his official bond.   Shortage in his accounts
was discovered, occasioned by his indorsement of
several checks, payable to him as county clerk on
account of welfare contributions by county munici-
palities and townships, and depositing them in his
personal drawing account at the defendant bank
and checking parts thereof for his personal use.
There was no special designated depository for such
funds.   Plaintiff, as surety on the official bond of
the clerk, paid the amount of the defalcation and
the county assigned to plaintiff its claim, if any,
against defendant bank.   Thereupon the surety, sub-
rogated to the rights of the county, brought this
suit to recover the money paid by it to the county;
claiming liability on the part of the bank in not
heeding the fact that the checks, presented by the
county clerk for deposit credit in his personal draw-
ing account, constituted funds payable to him only
in his official capacity, and in giving him credit
therefor in his personal commercial account.   Upon
trial plaintiff had judgment for $1,595.47, and de-
fendant reviews by appeal.

Plaintiff claims that defendant bank had notice
by way of statutes, 1 Comp. Laws 1929, § 1313 (Stat.
Ann. § 5.832), imposing a duty on the clerk to pay
over all moneys that may come to his hands as such
clerk, and 1 Comp. Laws 1929, § 1266 (Stat. Ann.
§ 5.686), making it the "duty of the county treas-
urer to receive all moneys belonging to the county,
from whatever source they may be derived;" also
1 Comp. Laws 1929, § 1193 (Stat. Ann. § 5.531),
making it the "duty of the county treasurer of any
county to deposit daily all moneys, drafts or checks

on hand received by him as such treasurer, in such bank or banks as may be designated by the board of supervisors or the board of county auditors.''

Under such statutes the deposit of the checks by the county clerk and direction of entry of credit therefor in his personal drawing account was unlawful. The defendant bank was required to observe want of power on the part of the county clerk to use the checks in the manner he did.

The trial judge thought the question was decided in *Fidelity & Casualty Co. of New York* v. *Farmers National Bank of Hudson,* 275 N. Y. 194 (9 N. E. [2d] 833), and by the opinion of this court in *McIntosh* v. *Detroit Savings Bank,* 247 Mich. 10. Those cases involved breach of contract on the part of the bank with reference to written depository agreements and obligations. The case at bar sounds in tort rather than in contract.

Defendant urges applicability of the rule relative to deposit of trust funds by a trustee, executive or administrator, or other fiduciary, in his personal checking account in the bank, and cites our holding in *Columbia Land Co.* v. *Empson,* 305 Mich. 220, holding a bank not liable for subsequent personal use of the funds by such a depositor. Such is not the case at bar, for here we have a public officer with his rights and duties specifically regulated by statute, with no trustee, fiduciary, or *cestui que trust* involved.

In *Employers' Liability Assurance Corp., Ltd., of London, England* v. *Hudson River Trust Co.,* 250 App. Div. 159 (294 N. Y. Supp. 698), a county treasurer deposited county funds in his personal account and it was held:

''In the type of cases relating to public officials the statutory limitation upon the authority of the official to deal with public funds is presumed to be known by all, and a bank knowingly receiving funds

from a public official under circumstances contrary
to the statute is chargeable with notice of the vio-
lation and put upon inquiry to ascertain the truth.
\* \* \*

"Here the defendant trust company was charge-
able with knowledge that the county treasurer was
withdrawing county funds from the designated de-
pository and depositing them in his own name in
his personal account with defendant. Defendant
knew that the county treasurer could only with-
draw these moneys from the designated depository
for claims ordered to be paid by the board of super-
visors or other lawful authority or for salaries of
county officers. It seems clear that the facts would
have indicated to a reasonably prudent person that
these checks payable to the order of De Witt
(county treasurer) or cash, were not in payment
of his salary or the salary of other county officers,
and that such checks were not being issued in pay-
ment of claims which had been ordered paid by the
board of supervisors or other lawful authority. If
these checks were in payment of authorized claims
they would naturally have been made payable to
and delivered to the owner thereof. The form of
the checks in connection with the knowledge with
which the trust company was chargeable certainly
indicated that the statute was not being complied
with as to the withdrawal of the funds from the
lawful designated depository and indicated that
their application and use by the county treasurer
was contrary to law. The facts were thus sufficient
to put the defendant on notice and to charge it with
the duty to investigate, and thus it was chargeable
with knowledge of the truth."

This case was reviewed in a memorandum opin-
ion, *Employers' Liability Assurance Corp., Ltd., of
London, England* v. *Hudson River Trust Co.*, 276
N. Y. 542 (12 N. E. [2d] 567), and, with some re-
duction in the amount of the judgment, affirmed. In

that case the surety on the official bond of the county treasurer paid the county the amount of the defalcation and was subrogated to the rights of the county against the bank.

There is no claim that the bank acted in bad faith or was benefited in any way. The county had no account in the bank. The statutes mentioned clearly limit the power of the county clerk in the premises and the bank must be held to have had cognizance of such public law.

The judgment is affirmed, with costs to plaintiff.

CHANDLER and BUSHNELL, JJ., concurred with WIEST, J.

BOYLES, C. J. (*concurring*). I question whether the statutes cited and relied on by Mr. Justice WIEST "specifically regulate" or "clearly limit the power of the county clerk in the premises"—this being the sole basis for the conclusion reached. 1 Comp. Laws 1929, § 1313 (Stat. Ann. § 5.832), merely outlines the condition of the bond required of county clerks. 1 Comp. Laws 1929, § 1266 (Stat. Ann. § 5.686), and 1 Comp. Laws 1929, § 1193 (Stat. Ann. § 5.531), define the duties of the county *treasurer*—to receive all money belonging to the county and deposit the same in designated banks. However, I believe that there are additional circumstances sufficient to establish that the bank had notice of the fact that these funds were public moneys, and therefore a participant in the misapplication of these funds.

Under a resolution adopted by the supervisors of Washtenaw county, agreements were entered into between the county and various cities and townships within the county, whereby these cities and townships were to reimburse the county for the expense

of administering welfare relief in their respective municipal subdivisions. The county clerk was designated as the recognized representative of the county, to notify the county welfare relief commission as to what units were entitled to relief, and the welfare relief commission was to give the county clerk a monthly statement of the amount chargeable to each participating township and city. Under the agreements, the township or city agreed to pay to "the county of Washtenaw" the amount thus expended, within 15 days after notification by the county clerk of the amount due. In making such payments, the several checks in question were made payable to Gibb as county clerk. These checks were received by the bank for deposit in Gibb's personal account. On their face, these checks were notice to the bank that this was public money, not private funds. They were drawn by public officers (city mayor and clerk, township treasurer) "from poor fund," payable to Gibb as county clerk and indorsed by Gibb as county clerk. It must have been apparent to the bank that the Washtenaw county clerk was receiving "poor funds" for welfare purposes, when the bank allowed the checks to be deposited to the personal credit of Gibb.

Under these circumstances, I agree that the bank had sufficient notice to put it on inquiry, when it permitted Gibb to deposit these checks in his personal account. The situation is entirely different from the facts in *Columbia Land Co. v. Empson,* 305 Mich. 220, and also entirely different from the statute law in *Employers' Liability Assurance Corp., Ltd., of London, England* v. *Hudson River Trust Co.,* 250 App. Div. 159 (294 N. Y. Supp. 698), relied upon by Mr. Justice Wiest. In the latter case, a county *treasurer* deposited county funds in a bank in his personal account. The New York stat-

ute, as in Michigan, expressly requires the county treasurer to deposit county moneys in a designated depository and. withdraw such moneys only on order of the board of supervisors or other lawful authority. (See 1 Comp. Laws 1929, § 1193 [Stat. Ann. § 5.531], and 1 Comp. Laws 1929, § 1266 [Stat. Ann. § 5.686], *supra.*) Both the New York and Michigan statutes definitely prescribe the duties of the county *treasurer*. Michigan has no similar statute law prescribing the duties of the county clerk.

Because of the above circumstances, I concur in the result reached by Mr. Justice Wiest.

Sharpe, J., concurred with Boyles, C. J.

North, J. (*dissenting*). Careful consideration of both the factual and legal aspects of this appeal, convinces me that the judgment of the trial court should be reversed. For that reason I am in disagreement with the opinions for affirmance written by Mr. Justice Wiest and Chief Justice Boyles.

The facts involved are sufficiently noted in my Brothers' opinions. But attention should be directed to the following salient, and I think controlling, aspects of the case.

The county had no account in the defendant bank. The only account Gibb, the county clerk, had in defendant bank was his own personal account which was opened June 2, 1937. Thereafter and prior to December 28, 1937, he deposited in that account both his personal funds and six checks totaling $5,546.28 which were for county funds. Gibb by his personal checks drawn on this account turned over money from time to time to the county totaling $4,401.56. But to the extent of approximately $1,150 he appropriated from this bank account county funds for his personal use, There is no testimony tend-

ing to show either at the time Gibb made the de-
posits in or withdrawals from this account that the
defendant bank had actual or constructive notice of
Gibb's attempt to misappropriate any of the county
funds; or that the bank benefited by Gibb's use of
these funds.  There was no designated depository
or designated manner of making deposits of these
county funds.  And, as pointed out in the opinion
of Chief Justice Boyles, there was no statutory pro-
vision applicable to deposits of public funds by
county clerks.

I do not agree with the statement of Mr. Justice
Wiest that (because of the inapplicable statutory
provisions cited by him) : "Under such statutes the
deposit of the checks by the county clerk and direc-
tion of entry of credit therefor in his personal draw-
ing account was unlawful."  Nor do I agree with
the following from Mr. Justice Wiest's opinion:
"here we have a public officer with his rights and
duties specifically regulated by statute, with no
trustee, fiduciary, or *cestui que trust* involved."  As
just above noted the phase of the discharge of the
county clerk's duties in the particular here involved
is not "regulated by statute;" and any application
of the reference to "trustee" or "fiduciary" is
clearly erroneous if it is meant thereby to infer that
in his receipt or possession of county funds the
county clerk was not acting in a trust or fiduciary
capacity.  Nothing is more firmly embodied in our
law than the truism that: "A public office is a public
trust."

A county clerk is as much a trustee of county
funds which come into his custody as is the secre-
tary-treasurer of a private corporation a trustee of
corporate funds which come into his hands.  This
being so, the law of this case is controlled by our
recent decision in *Columbia Land Co. v. Empson*, 305

Mich. 220, which case in principle is on all fours with the instant case and wherein (quoting syllabi) it is said:

"The mere fact that a corporate officer who is fully authorized to receive money, indorse checks in the name of the corporation, deposit funds in the bank, pay out money for the corporation and handle its finances, deposits corporate checks in his personal account is not sufficient to charge the bank with notice that he intends to misappropriate corporate funds and the bank is not liable for the misappropriation of the corporate funds in the absence of any statute declaring such liability."

"Although a bank knows that the funds deposited with it are trust funds and the deposit is made in the name of the trustee personally, the bank is not bound to make inquiry whether the trustee is committing a breach of trust in making the deposit and although the deposit is made in breach of trust, the bank in receiving the deposit is not liable for participation in the breach of trust, in the absence of further circumstances known to the bank indicating the trustee is committing a breach of trust."

To hold defendant bank liable under the facts of this case not only would be in conflict with our holding in the *Columbia Land Company Case, supra,* but it would contravene the law which, it has been said, constitutes the great weight of authority.

"The weight of authority is also to the effect that a bank is not charged with notice of misappropriation by an agent or fiduciary merely because the latter deposited to his individual account a check or note payable to or indorsed by him in his fiduciary capacity." 7 Am. Jur. p. 376.

"The better reasoned cases hold that, in the absence of a statute making it so, the drawing of a

check in due form upon a trust fund and the depositing of it in the same bank to the personal credit of the trustee is neither a conversion or a misappropriation of the fund nor notice to the bank of any such purpose." *Maryland Casualty Co.* v. *City National Bank,* 29 Fed. (2d) 662 (C. C. A.), a decision of the circuit court of appeals and certiorari was denied by the Federal supreme court. 279 U. S. 847 (49 Sup. Ct. 345, 73 L. Ed. 991).

"In the absence of statutory prohibition, a fiduciary may legally deposit trust funds in a bank to his individual account and credit, and the bank's knowledge of the nature of the funds deposited does not affect the character of the act. * * * The fact that the bank permits a fiduciary to deposit known trust funds to his individual account does not of itself impose liability on the bank for conversion nor constitute a participation by the bank in a subsequent misappropriation of the funds by the fiduciary." 9 C. J. S. p. 610.

In support of the above-quoted context numerous cases are cited including the Federal decision just above quoted and decisions from New York, Kentucky, South Carolina, Texas, Washington and Idaho. The supreme court of Oregon has held that a bank, acting in good faith, by crediting trust funds, knowing them to be such, to a fiduciary's personal account, will not thereby be rendered liable if the fiduciary subsequently appropriates such funds. See *New Amsterdam Casualty Co.* v. *Robertson,* 129 Ore. 663 (278 Pac. 963, 64 A. L. R. 1396). To the same effect see, also, *Helena* v. *First National Bank of Helena,* 173 Ark. 197 (292 S. W. 140); and *Quanah, A. & P. R. Co.* v. *Wichita State Bank & Trust Co.,* 127 Tex. 407 (93 S. W. [2d] 701, 106 A. L. R. 821). In the A. L. R. note to the Texas case the following is said:

"The rule stated in the earlier annotations, to the effect that, while the deposit by an agent, or fiduciary, of paper drawn by him in his representative capacity, for credit to his individual account, may, along with other circumstances, be sufficient to charge the depository bank with notice of misappropriation by the agent or fiduciary, such deposit, without additional circumstances, will not constitute such notice, is supported by the following later cases," citing numerous cases from courts of last resort.

It would seem that an accurate statement of the applicable rule is as follows: "A bank knowingly participating in misappropriation of public funds by a public official may be held responsible therefor, *although where such participation is not shown the bank will not be liable.*" 9 C. J. S. "Banks and Banking," p. 611.

Incident to the statement that it is not the business or duty of a bank to administer or supervise the administration of trust funds, it has been appropriately and rather forcibly pointed out: "Any other rule would throw upon a bank the duty of inquiring as to the appropriation made of every fund deposited by a trustee or other like fiduciary; and the imposition of any such a duty would practically put an end to the banking business, because no bank could possibly conduct business, if, without fault on its part, it were held accountable for the misconduct or malversations of its depositors who occupy some fiduciary relation to the fund placed by them with the bank." 7 Am. Jur. "Banks," p. 375.

It is too obvious for argument that except the rule announced in the above-cited authorities is followed, a bank accepting a deposit under the circumstances of the instant case would be compelled to do one of two things. It would be compelled to accept and

administer the deposit at its peril or to act as a "supersnooper" by way of investigating each transaction related to such an account. The banking business of the country should not be hampered or penalized by the adoption of so harsh a rule. In substance we so held in our recent decision in the *Columbia Land Company Case, supra,* quoting from the syllabus:

"A bank's knowledge that moneys deposited with it have been acquired by a depositor in a fiduciary capacity does not impose on it the duty, or give it the right, to institute an inquiry into the conduct of its customer in order to protect those for whom he may hold the fund, but between whom and the bank there is no privity, as the bank has a right to presume that the fiduciary will apply the funds to their proper purposes under the trust."

The above holding is in full accord with the Restatement of the Law on Trusts wherein it is said:

"Although the bank knows that the funds deposited are trust funds, and the deposit is made in the name of the trustee personally, the bank is not bound to make inquiry whether the trustee is committing a breach of trust in making the deposit; and although the deposit is made in breach of trust, the bank in receiving the deposit is not liable for participation in the breach of trust, in the absence of further circumstances known to the bank indicating that the trustee is committing a breach of trust." 2 Restatement, Trusts, chap. 9, § 324, p. 966.

In addition to like items hereinbefore noted there was a check drawn on another Ann Arbor bank for $93.82, dated June 1, 1937, payable "to the order of Emmett Gibb, Co. Clerk." This check was indorsed "Emmett M. Gibb, County Clerk"; and defendant bank cashed it for Gibb. This transaction was

clearly according to the exact terms of the check in the regular course of banking. No circumstance attended the cashing of this check which could be held to be actual or constructive notice to the defendant bank that Gibb would appropriate the money to his own use in violation of his fiduciary duty; and defendant bank is not liable for Gibb's misappropriation of the money rightfully paid to him on this check.

The only ground or theory on which plaintiff asserts a right of recovery is stated in its declaration as follows: "That by reason of the defendant bank's failure to refuse to credit to the personal account the funds drawn to Emmett M. Gibb in a fiduciary capacity, a defalcation on the part of Emmett M. Gibb of county funds was permitted to the loss of this plaintiff." Under such an allegation and in the absence of proof of any other fact or circumstance which would charge the defendant bank with either actual or constructive notice of Gibb's defalcation, we conclude, in accord with the above-noted authorities, that plaintiff cannot recover. In holding otherwise the trial judge, who heard this case without a jury, was in error. The judgment entered in the circuit court should be reversed.

Starr and Butzel, JJ., concurred with North, J.