# IN THE SUPREME COURT OF IOWA

No. 21–1977

Submitted January 18, 2023—Filed May 12, 2023

**AIDEN VASQUEZ** and **MIKA COVINGTON,**

Appellees/Cross-Appellants,

vs.

**IOWA DEPARTMENT OF HUMAN SERVICES,**

Appellant/Cross-Appellee.

Appeal from the Iowa District Court for Polk County, William P. Kelly, Judge.

The Iowa Department of Human Services appeals the district court ruling requiring its Medicaid program to pay for gender-affirming surgery for two transgender adults who cross-appeal the denial of their claim for attorney fees. **DIRECT APPEAL DISMISSED AS MOOT; FEE RULING AFFIRMED ON CROSS-APPEAL.**

Waterman, J., delivered the opinion of the court, in which all justices joined.

Brenna Bird, Attorney General, Samuel P. Langholz, Chief Deputy Attorney General, and Thomas J. Ogden (argued), Assistant Attorney General, for appellant/cross-appellee.

Rita Bettis Austen and Shefali Aurora of ACLU of Iowa Foundation, Inc., Des Moines, Lisa Nowlin-Sohl of ACLU Foundation, New York, New York, and

Seth A. Horvath (argued), F. Thomas Hecht, and Tina B. Solis of Nixon Peabody LLP, Chicago, Illinois, for appellees/cross-appellants.

Melissa C. Hasso of Sherinian & Hasso Law Firm, Des Moines, and Steve Sanders of Maurer School of Law, Indiana University, Bloomington, Indiana, for amici curiae Iowa Law Professors.

Roxanne Barton Conlin and Devin C. Kelly of Roxanne Conlin & Associates, P.C., Des Moines, and James W. Ducayet, Paul E. Bateman, Jr. (until withdrawal), Emily Scholtes, and Fiona Collins of Sidley Austin LLP, Chicago, Illinois, for amici curiae Chicago Lawyers' Committee for Civil Rights, Iowa Safe Schools, Professor Leonard A. Sandler, Clinical Professor and Director, University of Iowa.

Scott M. Brennan, Elizabeth A. Etchells, and Katelynn T. McCollough of Dentons Davis Brown PC, Des Moines, for amici curiae One Iowa, Individual Transgender Iowans, and allies.

Joshua Matz and Raymond P. Tolentino of Kaplan Hecker & Fink LLP, Washington, D.C., and Joseph C. Glazebrook, Des Moines, for amici curiae Bay Area Lawyers for Individual Freedom, Forge, Inc., GLBTQ Legal Advocates & Defenders, Lambda Legal Defense and Education Fund, Inc., National Center for Transgender Equality, National LGBTQ+ Bar Association, National LGBTQ Task Force, National Women's Law Center, Southern Arizona Gender Alliance, Trans People of Color Coalition, Trans Youth Equality Foundation, Transgender Legal Defense & Education Fund, and Transgender Resource Center of New Mexico.

Paige Fiedler and Amy Beck of Fiedler Law Firm, P.L.C., Johnston, and Robert R. Stauffer of Jenner & Block LLP, Chicago, Illinois, for amici curiae The American Medical Association, The Iowa Medical Society, The American College of Obstetricians and Gynecologists, The American College of Physicians, The American Psychiatric Association, The Endocrine Society, GLMA: Health Professionals Advancing LGBT Equality, Mental Health America, North American Society for Pediatric and Adolescent Gynecology, and Society of OB/GYN Hospitalists.

**WATERMAN, Justice.**

Choices have consequences, and in this case, the appellant's choices prompt us to dismiss its direct appeal as moot. The Iowa Department of Human Services (DHS)[1] appeals from a district court ruling requiring Iowa's Medicaid program to pay for sex reassignment surgery[2] for two transgender adults. But after losing the fight in district court, DHS agreed to pay for their surgeries and declined to appeal the adjudication declaring unconstitutional Medicaid rule 441—78.1(4), which excluded payment for sex reassignment surgery. DHS still asks us to reverse the district court's adjudication declaring unconstitutional Iowa Code section 216.7(3) (2020), an amendment to the Iowa Civil Rights Act (ICRA) enacted specifically to authorize exclusions for sex reassignment surgery. We decline to decide that issue through an advisory opinion that is now merely of academic interest to these litigants. We save the constitutional issues for another day, presumably with a better-developed record.

The cross-appeal is not moot. The district court ruled that the successful transgender litigants were not entitled to recover their attorney fees from DHS in this judicial review action under Iowa Code chapter 17A. We affirm that ruling. These individuals never sued under the ICRA, and their fee claim is barred by Iowa Code section 625.29(1), paragraphs (*b*) and (*d*). For the reasons more fully

[1]DHS will officially become the Iowa Department of Health and Human Services (HHS) on July 1, 2023. The proceedings in this case took place while the entity was still DHS. Accordingly, we refer to it as "DHS" throughout this opinion.

[2]We use the terminology employed in the legislative enactment at issue. *See* Iowa Code § 216.7(3) (2020); *see also* Iowa Admin. Code r. 441—78.1(4)(*b*)(2).

explained below, we dismiss the direct appeal as moot sua sponte and affirm the denial of fees on the cross-appeal.

## I. Background Facts and Proceedings.

Petitioners Aiden Vasquez and Mika Covington are adult transgender Iowans who requested and were denied preauthorization for sex reassignment surgeries[3] through Iowa's Medicaid program.[4] Vasquez, now age 54, was born female but has expressed "his male identity in various ways since the age of eight." Vasquez was diagnosed with gender dysphoria in 2016. Vasquez started hormone therapy that year and began socially transitioning from female to male, presenting as a man and using male pronouns and restrooms. In May 2016, he legally changed his name and amended his driver's license and social security card to reflect his male identity. In September 2016, he underwent a double

---

[3]Both petitioners seek a form of "bottom surgery"—a phalloplasty and a vaginoplasty, respectively.

A phalloplasty is a multi-stage procedure that involves removing flaps of skin from the arm, leg, or side and rolling them into a tube. The tube is sewn onto the groin. Later, a prosthesis is inserted within the tube. The prosthesis inflates upon the activation of a pump that hangs free between the tube and the patient's body. *See* Fan Liang, *Phalloplasty for Gender Affirmation*, Johns Hopkins Med., https://www.hopkinsmedicine.org/health/treatment-tests-and-therapies /phalloplasty-for-gender-affirmation [https://perma.cc/ZEQ7-D4B8].

A vaginoplasty is "plastic surgery of the vagina." *Vaginoplasty*, *Stedman's Medical Dictionary* (27th ed. 2000). As part of the procedure, "the penile skin is turned inside out like a sock" and used to create a vaginal cavity. *Vaginoplasty Techniques*, Rumer Cosmetic Surgery, https://rumergendersurgery.com/gender-reassignment-surgery/vaginoplasty-techniques [https://perma.cc/7QEY-Z75N]. Additional skin is taken from the surrounding area and rearranged, but "the surgeon may need to use a skin graft from the abdomen or thigh to construct a full vaginal canal." Fan Liang, *Vaginoplasty for Gender Affirmation*, Johns Hopkins Med., https://www.hopkinsmedicine.org/health/treatment-tests-and-therapies/vaginoplasty-for-gender-affirmation [https://perma.cc/4PFP-ALDT].

[4]Both have previously sued to challenge the constitutionality of an amendment to the Iowa Civil Rights Act that provides denying public funds for sex reassignment surgeries does not violate the Iowa Civil Rights Act. The district court dismissed their lawsuit for failure to exhaust administrative remedies, and the court of appeals affirmed because they had not yet requested and been denied Medicaid coverage for their bottom surgeries. *See Covington v. Reynolds ex rel. State*, No. 19–1197, 2020 WL 4514691, at *1, *3 (Iowa Ct. App. Aug. 5, 2020).

mastectomy to "better align his body with his gender identity." The next month he amended his birth certificate "to reflect his male gender identity." He reports "a long history of self-harm and suicidality stemming from depression caused by his gender dysphoria" and that "[h]e is severely distressed with his genitalia, which does not align with his gender identity and exacerbates his depression."

Covington, now age 31, was born male but "expressed her female identity in various ways since the age of six." In 2009, Covington began socially transitioning from male to female, using feminine pronouns. In 2014, Covington legally changed her name to reflect her identity as a woman. She was diagnosed with gender dysphoria in 2015 and began hormone therapy. Covington reports she "is severely distressed with her genitalia, which does not align with her gender identity and exacerbates her depression and anxiety."

Vasquez and Covington are patients of the same primary care physician, Dr. Nicole Nisly, who recommended that each undergo bottom surgery. Their managed care organization (MCO), Amerigroup of Iowa, denied their requests, citing a longstanding Iowa administrative rule and a 2019 amendment to the ICRA.

**A. The Regulation.** Before 1980, DHS applied an informal policy of excluding sex reassignment surgeries from Medicaid coverage. *See Pinneke v. Preisser*, 623 F.2d 546, 548, 549 (8th Cir. 1980). The agency, without conducting any rulemaking proceedings or hearings, categorized sex reassignment surgery with "cosmetic" procedures and those meant to treat "mental diseases." *Id.* at 548 n.2, 550; *Good v. Iowa Dep't of Hum. Servs.*, 924 N.W.2d 853, 862 (Iowa

2019). The United States Court of Appeals for the Eighth Circuit determined that the exclusion was arbitrary and unenforceable. *Pinneke*, 623 F.2d at 549.

In 1994, the agency codified its policy in a new administrative rule (the Regulation). 17 Iowa Admin. Bull. 730–34 (Nov. 9, 1994) (effective Feb. 1, 1995); *see also Smith v. Rasmussen*, 249 F.3d 755, 760 (8th Cir. 2001). This formal policy, like its informal predecessor, was challenged in federal court. *Smith*, 249 F.3d at 760. This time, the challenge failed because DHS followed the appropriate rulemaking procedures and did its research. *Id.* at 760–61. The Regulation now at issue excludes from Medicaid coverage "cosmetic, reconstructive, or plastic surgery . . . [p]rocedures related to transsexualism, hermaphroditism, gender identity disorders, or body dysmorphic disorders." Iowa Admin. Code r. 441—78.1(4)(*b*)(2). The Regulation explains that "[s]urgeries for the purpose of sex reassignment are not considered as restoring bodily function and are excluded from coverage." *Id.* r. 441—78.1(4). The Regulation also excludes coverage for numerous other procedures altering physically healthy tissue or body parts for cosmetic or psychological purposes, including female breast augmentation and nose plastic surgery for persons of either sex. *Id.* r. 441—78.1(4)(*b*)(4), (*d*)(1).

In 2007, the general assembly expanded the scope of the ICRA to prohibit discrimination in public accommodations based on gender identity. *See* 2007 Iowa Acts ch. 191, § 5 (codified at Iowa Code § 216.7(1)(*a*)–(*b*) (2009)). In 2019, we held the Regulation violated the ICRA's statutory prohibition on gender identity discrimination in *Good v. Iowa Department of Human Services*, 924

N.W.2d at 861–63. We did not reach the constitutional challenge to the Regulation. *Id.* at 863 (applying the constitutional avoidance doctrine).

**B. The ICRA Amendment.** In 2019, in response to *Good*, the legislature enacted an amendment to the ICRA (the ICRA amendment) that stated, "[The ICRA] shall not require any state or local government unit or tax-supported district to provide for sex reassignment surgery or any other cosmetic, reconstructive, or plastic surgery procedure related to transsexualism, hermaphroditism, gender identity disorder, or body dysmorphic disorder." 2019 Iowa Acts ch. 85, § 93 (codified at Iowa Code § 216.7(3) (2020)).

**C. This Litigation.** Vasquez and Covington appealed their MCO's denial of coverage to DHS. An administrative law judge (ALJ) held evidentiary hearings and proposed rulings affirming the denials. The director of DHS adopted the rulings as DHS's final agency action. Vasquez and Covington each filed an action for judicial review of DHS's decision under the Iowa Administrative Procedure Act (IAPA). *See* Iowa Code § 17A.19. Their cases were consolidated in the Iowa District Court for Polk County.

In the district court, Vasquez and Covington argued that DHS's denial of coverage should be vacated because the Regulation and the ICRA amendment facially violate the guarantee of equal protection under the Iowa Constitution.[5] *See* Iowa Const. art. I, § 6. Vasquez and Covington also sought attorney fees.

---

[5]Petitioners also argued that the ICRA amendment violated the single-subject and title notice requirements of the Iowa Constitution, Iowa Const. art. III, § 29, and that the decision to deny them Medicaid coverage for their bottom surgeries exhibited gender identity and sex discrimination, demonstrated discriminatory animus towards transgender people, constituted a

The district court concluded transgender people are a quasi-suspect class warranting the application of heightened scrutiny. It concluded the Regulation and the ICRA amendment violated the guarantee of equal protection under the Iowa Constitution under both rational basis review and intermediate scrutiny. The district court treated the Regulation and the ICRA amendment as "unavoidably intertwined," characterizing the whole as "Iowa's prohibition against medically necessary gender-affirming surgical procedures in the current statute." The district court went on to reject Vasquez and Covington's additional argument that the legislature was motivated by animus against transgender people when it enacted the ICRA amendment. And the district court denied Vasquez and Covington's request for attorney fees. The court ruled that the fee-shifting provision in the ICRA was inapplicable in this chapter 17A judicial review action and also that fees were disallowed under Iowa Code section 625.29(1)(*d*).

DHS appealed the district court's ruling on the constitutionality of the ICRA amendment but chose not to appeal the ruling on the Regulation. DHS argues the issue of the constitutionality of the Regulation is therefore moot, while Vasquez and Covington argue that the Regulation is so bound up with the ICRA amendment that the constitutionality of the Regulation remains a justiciable issue. On the merits, DHS argues that the ICRA amendment is not what the district court said it was: a prohibition on Medicaid coverage for sex

---

disproportionate negative impact on private rights, and was an unreasonable, arbitrary, and capricious decision.

reassignment surgery. Instead, DHS characterizes it as a clarification that the ICRA does not require the state or its subdivisions to provide such coverage. DHS argues that the legislature did not have to add gender identity to the antidiscrimination provisions of the ICRA in 2007, and just as the legislature could remove that protection altogether, it could enact narrower protection. Vasquez and Covington reply that even the plain text of the amendment violates equal protection because it "exempt[s] only transgender people from the normal nondiscrimination protections and remedies that apply to all Iowans under [the] ICRA with respect to Medicaid coverage."

Vasquez and Covington cross-appealed the denial of attorney fees. They argue the ICRA allows fee-shifting in this chapter 17A judicial review action. DHS responds that the district court correctly denied their fee claims pursuant to Iowa Code section 625.29(1)(*d*) and correctly ruled that the fee-shifting provisions in the ICRA do not apply.

We retained the case.

**II. Standard of Review.**

Iowa Code section 17A.19 generally governs judicial review of agency action. *Good*, 924 N.W.2d at 860. Constitutional claims arising in agency proceedings are reviewed de novo. *Endress v. Iowa Dep't of Hum. Servs.*, 944 N.W.2d 71, 76 (Iowa 2020). We review rulings on whether fees are available in agency proceedings for correction of errors at law. *Id.*

"Mootness is, however, 'a threshold question.'" *Riley Drive Ent. I, Inc. v. Reynolds*, 970 N.W.2d 289, 296 (Iowa 2022) (quoting *Homan v. Branstad*, 864

N.W.2d 321, 327 (Iowa 2015)). "An appellate court may consider matters technically outside the district court record in determining a question of mootness." *Id.*

**III. Analysis.**

**A. DHS's Direct Appeal.** We begin with the threshold question of mootness. Although both sides urge us to decide the constitutionality of Iowa Code section 216.7(3), "an appellate court has responsibility *sua sponte* to police its own jurisdiction." *Bribriesco-Ledger v. Klipsch*, 957 N.W.2d 646, 649 (Iowa 2021) (quoting *Crowell v. State Pub. Def.*, 845 N.W.2d 676, 681 (Iowa 2014)) (addressing mootness even though "[n]o party has raised mootness as a ground to prevent our consideration of this appeal"). Today we confront litigation brought by two, and only two, transgender adults seeking Medicaid reimbursement for their bottom surgeries. DHS has now agreed to pay for those surgeries. That concession renders DHS's direct appeal moot.

"Courts exist to decide cases, not academic questions of law. For this reason, a court will generally decline to hear a case when, because of changed circumstances, the court's decision will no longer matter." *Riley Drive Ent. I, Inc.*, 970 N.W.2d at 296 (quoting *Homan*, 864 N.W.2d at 328). The parties to this appeal essentially ask for an advisory opinion on what is now an academic question of constitutional law. That is not our role. DHS has committed to paying for bottom surgeries for Vasquez and Covington regardless of how we decide the constitutional issue. There is no longer a live controversy between these litigants over Medicaid reimbursement for their surgeries.

As in *Riley Drive Entertainment I, Inc. v. Reynolds*, 970 N.W.2d at 298–300, and *Homan v. Branstad*, 864 N.W.2d at 330–32, we decline to apply a mootness exception. The issues concerning Medicaid coverage for adult sex reassignment surgery are of public importance and likely to recur, but not in a manner that will evade appellate review. For several reasons, this case is a poor vehicle for a precedential decision on the constitutionality of Iowa Code section 216.7(3).

First, as the parties and district court recognize, the questions of the constitutionality of that statute and the Regulation are "unavoidably intertwined." Yet DHS declined to appeal the district court ruling that Medicaid rule 441—78.1(4) is unconstitutional. Our inability to decide the validity of this rule handicaps our review of the statute enacted to authorize it. The rule as applied in this case provides context; without it, we are deciding the constitutionality of the statute in a vacuum. DHS indicates it will enact a new and different rule.[6] Why not wait for a proper challenge by new litigants to provide a ripe, concrete dispute?

Second, the record made in this case is inadequate in several respects. DHS attempts to justify restrictions on sex reassignment surgery as cost savings measures to protect the public fisc. Yet the record lacks any estimate of the cost of the bottom surgeries sought by these litigants or those who may follow. The record lacks any evidence of the growing number of Medicaid-eligible

---

[6]It may be a long wait, in light of the current, multi-year moratorium of rulemaking during the reorganization of the Executive Branch. State of Iowa Exec. Dep't, *Executive Order Number 10*, at 2 (Jan. 10, 2023), https://governor.iowa.gov/media/173/download?inline [https://perma.cc/E6SM-N4ZA].

transgender individuals expected to seek sex reassignment surgeries in the future, including individuals who would move to Iowa to obtain such surgeries and follow-up care. The record lacks any adversary-tested evidence concerning the efficacy of sex reassignment surgeries in improving the mental health of the recipients. No record was made of peer-reviewed scientific studies evaluating the medical necessity or efficacy of sex reassignment surgeries. *See Gibson v. Collier*, 920 F.3d 212, 221 (5th Cir. 2019) ("As the First Circuit concluded in *Kosilek* [*v. Spencer*, 774 F.3d 63, 72, 73, 86–88 (1st Cir. 2014) (en banc)], there is no consensus in the medical community about the necessity and efficacy of sex reassignment surgery as a treatment for gender dysphoria. At oral argument, . . . counsel did not dispute that the medical controversy identified in *Kosilek* continues to this day."). Indeed, the district court likened the agency proceedings to "a prolonged default judgment" and noted, "There was no adversarial process in building this record to search for the truth." Accordingly, a decision from our court today "would probably only provide a point of reference" for future cases to be decided under different records. *Riley Drive Ent. I, Inc.*, 970 N.W.2d at 300.

Third, the law nationally is in flux, with conflicting rulings on transgender constitutional rights. The United States Supreme Court has not yet decided whether transgender litigants are a quasi-suspect class triggering heightened scrutiny of legislative enactments affecting them. Neither have we. The Supreme Court could decide soon. *See, e.g., West Virginia v. B.P.J. ex rel. Jackson*, 143 S. Ct. 889 (2023) (Alito, J., dissenting from denial of application to vacate injunction). Some courts have applied intermediate scrutiny for transgender

rights claims. *E.g., Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 609 (4th Cir. 2020). But en banc rehearings are pending in federal courts of appeals. *E.g., Fain v. Crouch,* No. 22–1927, 2023 WL 2908815, at \*1 (4th Cir. Apr. 12, 2023) (order granting rehearing en banc after oral argument held but before panel opinion issued); *Kadel v. Folwell,* No. 22–1721, 2023 WL 2908816, at \*1 (4th Cir. Apr. 12, 2023) (same); *Soule v. Conn. Ass'n of Schs., Inc.*, 57 F.4th 43 (2d Cir. 2022), *reh'g en banc granted,* No. 21–1365, at 2 (Feb. 13, 2023) (order granting rehearing en banc).

Some courts have applied rational basis review. *E.g., Brown v. Zavaras*, 63 F.3d 967, 971 (10th Cir. 1995); *Holloway v. Arthur Andersen & Co.*, 566 F.2d 659, 663 (9th Cir. 1977), *overruled on other grounds as recognized in Schwenk v. Hartford,* 204 F.3d 1187, 1201 (9th Cir. 2000); *Fields v. Smith*, 712 F. Supp. 2d 830, 867 (E.D. Wis. 2010). Other courts have questioned whether transgender persons satisfy traditional tests for status as a quasi-suspect class triggering heightened scrutiny. *E.g., Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 803 n.5 (11th Cir. 2022) (en banc) ("[W]e have grave 'doubt' that transgender persons constitute a quasi-suspect class."). "Indeed, the Supreme Court has rarely deemed a group a quasi-suspect class." *Id.* (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 442–46 (1985) (reversing a lower court decision creating a new quasi-suspect class)).

For these reasons, we decline to apply a mootness exception. We dismiss DHS's direct appeal as moot.[7]

**B. The Cross-Appeal.** As noted, the cross-appeal is not moot. Vasquez and Covington argue the district court erred in denying their request for attorney fees. We disagree and affirm.

The district court rejected their claim to recover attorney fees under the ICRA. The district court correctly ruled that this judicial review proceeding is governed by Iowa Code chapter 17A, not the ICRA. The fee-shifting provisions under the ICRA are available only in actions brought under the ICRA. *See* Iowa Code § 216.16(6) ("The district court may grant any relief in an action *under this section* which is authorized by section 216.15, subsection 9, to be issued by the commission." (emphasis added)). While the commission may grant relief in the form of attorney fees, *id.* § 216.15(9), the key words are "in an action under this section," meaning the ICRA, *id.* § 216.16(6). Vasquez and Covington never filed an ICRA action against DHS. To the contrary, as the district court observed, this case is a judicial review action under the IAPA. *See id.* § 17A.19(10). We have never extended the ICRA's fee-shifting provision to actions under the IAPA. We decline to do so now. The remedies available under the ICRA are conditioned upon compliance with its statutory requirements, including filing first with the Iowa Civil Rights Commission and exhausting remedies there, which Vasquez and Covington failed to do. *See id.* § 216.16(6); *see also Shumate v. Drake Univ.*,

---

[7]Issue preclusion would not prevent the state from relitigating the constitutionality of Iowa Code section 216.7(3) in a future case. *See Planned Parenthood of the Heartland, Inc. v. Reynolds*, 975 N.W.2d 710, 732 (Iowa 2022).

846 N.W.2d 503, 513–15 (Iowa 2014) (declining to allow parties to circumvent the procedural requirements of the ICRA). The ICRA does not support any fee award here.

As the district court recognized, the governing statute for fee awards in chapter 17A cases is Iowa Code section 625.29(1). The problem for Vasquez and Covington is that their case falls squarely within two separate subsections that preclude a fee award here. First, the statute disallows fee awards when the "state's role in the case was primarily adjudicative." *Id.* § 625.29(1)(*b*). DHS adjudicated their disputed claims to preauthorize their bottom surgeries through the contested hearing before the ALJ and on intra-agency appeal. Our precedent makes clear that an agency acts in a primarily adjudicative role even when it merely determines it lacks subject matter jurisdiction to decide constitutional challenges. *Endress*, 944 N.W.2d at 83 ("If DHS determines it lacks jurisdiction to hear a dispute it could otherwise adjudicate, a prevailing party cannot ask for section 625.29(1) attorney fees against DHS as the adjudicator."); *Colwell v. Iowa Dep't of Hum. Servs.*, 923 N.W.2d 225, 238 (Iowa 2019) ("Had DHS heard the dispute and Colwell prevailed, he could not ask for fees against DHS as the adjudicator. Therefore, he should not be entitled to fees when DHS determined it had no jurisdiction to hear the appeal.").

Second, the district court correctly concluded that another subsection disallows their fees because this "action arose from a proceeding in which the role of the state was to determine the eligibility or entitlement of an individual to a monetary benefit or its equivalent." Iowa Code § 625.29(1)(*d*). This provision

fits like a glove here: the role of the DHS was to determine their eligibility for Medicaid payments for their bottom surgeries.

For these reasons, we affirm the district court's ruling denying any fee award.

**IV. Disposition.**

We dismiss DHS's direct appeal as moot. On the cross-appeal, we affirm the district court's order denying attorney fees.

**DIRECT APPEAL DISMISSED AS MOOT; FEE RULING AFFIRMED ON CROSS-APPEAL.**